768 N.W.2d 464 (2009)
278 Neb. 238
STATE of Nebraska, Appellee,
v.
Rickey L. JIM, Appellant.
No. S-08-953.
Supreme Court of Nebraska.
July 31, 2009.
*467 Deborah D. Cunningham, Omaha, for appellant.
Jon Bruning, Attorney General, and James D. Smith, Lincoln, for appellee.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
MILLER-LERMAN, J.

NATURE OF THE CASE
Appellant, Rickey L. Jim, appeals the decision of the district court for Douglas County which denied postconviction relief. Because we find no error in the district court's conclusion that Jim was not denied effective assistance of appellate counsel, we affirm.

STATEMENT OF FACTS
Jim was convicted by a jury in the district court for Douglas County of the crime of child abuse resulting in death and sentenced to 40 to 50 years in prison. Jim's conviction was affirmed by the Court of Appeals on direct appeal in State v. Jim, 13 Neb.App. 112, 688 N.W.2d 895 (2004) (Jim I).
At trial, Jim was represented by the public defender, and on direct appeal, Jim was represented by different counsel. In Jim I, we recited the evidence at trial. The evidence showed that on the evening of May 7, 2001, Candice Bryan left for work and left her son, Layne Bryan Banik, and daughter, Sara Bryan Banik, in the care of Jim. Bryan returned from work around 11 p.m. but did not check on Layne or Sara, because the doors to their rooms *468 were closed. The next morning, Bryan found Layne in his bed with his face completely in the pillow. When she turned Layne over, his face was blue and he was stiff. After attempting to perform mouth-to-mouth resuscitation on Layne, Bryan called the 911 emergency dispatch service. After being told by the 911 operator to place Layne on a flat surface, Bryan moved him to the floor, placing him on his back, and she again attempted to resuscitate Layne. Her efforts were unsuccessful. An autopsy indicated that Layne had been dead for many hours.
During the trial, portions of a 3½-hour videotaped interview that the police conducted with Jim were presented to the jury. Trial counsel and the prosecutor had agreed to redact portions of the interview in which Jim mentioned bone fractures that Layne had sustained prior to the incident which caused his death. However, when the videotaped testimony was presented to the jury, it included the following statement by Jim to police officers: "Well now that you guys tell me his arm is broke, it's something you know, maybe I did pull his arm too hard or you know, I've, if, if something like that happened, I didn't mean for it to happen you know." The remainder of the statements by Jim concerning the three previous bone fractures were properly redacted.
Defense counsel objected to the introduction into evidence of the above-quoted portion of the videotape and moved for a mistrial. The district court denied the motion for mistrial but agreed to give the following statement instructing the jury with respect to the evidence:
During the course of the interrogation you heard statements made by the police officers to the defendant, including statements attributed to third parties. These statements are not offered for the truth of the matter contained in those statements and shall not be considered by you for that purpose. They're admitted solely to demonstrate the method of interrogation of the defendant and to put his statements in context.
Defense counsel did not request additional admonishment regarding the statements.
At trial, there was also testimony by the doctor who conducted Layne's autopsy. He testified that during the external examination, he observed blunt force trauma injuries in the form of abrasions and contusions on the lower part of Layne's nose, the upper and lower lips, the gums, both sides of the neck, the back of the scalp, and the back of the left shoulder.
Further, the doctor testified that in the examination of Layne's body cavity organs, there were focal areas of small pinpoint hemorrhages present on the lining of Layne's heart and both lungs, which hemorrhages are often seen in deaths caused by asphyxiation.
The doctor testified that based upon his experience and training, and his post mortem examination of Layne's body, his opinion to a reasonable degree of medical certainty regarding the cause of death was "asphyxiation secondary to smothering." The doctor testified that in his opinion based on a reasonable degree of medical certainty, the abrasions to Layne's nose, lips, and gums were caused by his neck's being forced into a pillow or bedding until he died and that the injuries were consistent with those produced by a struggling child who is having his face and mouth covered by being pushed into a pillow or bedding.
On appeal, Jim assigned as error, inter alia, that the district court erred in overruling his motion for mistrial based on the inadvertent admission of the unredacted comment in the videotaped testimony. In addressing this issue, the Court of Appeals reviewed the statement and concluded that "[a]lthough the objectionable testimony *469 should have been redacted along with the other portions of Jim's interview with police relating to long bone fractures, ... no substantial miscarriage of justice actually occurred in this case, nor was a fair trial prevented." Jim I, 13 Neb.App. at 131, 688 N.W.2d at 912. A petition for further review to this court was denied.
Jim filed a verified motion for postconviction relief on April 7, 2006. In his motion, Jim alleged that his appellate counsel was ineffective for failing to raise on appeal that his trial counsel was ineffective for (1) failing to file certain motions, (2) failing to call an expert witness, (3) failing to file a motion to withdraw as requested by defendant, and (4) allowing into evidence the unredacted comment in the videotaped testimony. Without conducting an evidentiary hearing, the district court ordered a new direct appeal on the issue of the admission of the unredacted portion of the videotaped testimony.
On appeal, this court reversed that order and remanded the cause for further proceedings, stating that on remand, the district court should determine the sufficiency of Jim's factual allegations in his postconviction motion and whether the files and records of the case affirmatively show that he is entitled to no relief. State v. Jim, 275 Neb. 481, 747 N.W.2d 410 (2008). We stated that if the factual allegations are sufficient and are not refuted by the files and records, the court should conduct an evidentiary hearing and make findings of fact and conclusions of law with respect to the merits of Jim's postconviction claims. Id.
On July 17, 2008, the district court held an evidentiary hearing on Jim's motion for postconviction relief. At the evidentiary hearing, the district court received into evidence Jim's deposition testimony, trial counsel's deposition testimony, appellate counsel's deposition testimony, and the bill of exceptions of the trial.
Trial counsel testified that the parties agreed that they would not introduce evidence of Layne's three older fractures. Trial counsel testified that he had received a copy of Jim's 3 ½-hour videotaped statement, and the transcription of the videotape, and had marked the portions that needed to be redacted based on this agreement. Trial counsel testified that he had reviewed his copy of the redacted tape before it was played and that he did not know whether the one statement remained unredacted because he missed it or because a different copy was played to the jury.
Trial counsel testified that his initial response to the playing of the tape was to move for a mistrial. He stated that when the motion was overruled, in considering what cautionary instruction should be given, he concluded that because the tape would not go to the jury room, he would request a "rather bland" instruction. He testified that he believed it unwise to request a limiting instruction which would highlight the unredacted statement and that he thought a general instruction would cover the statement without drawing further attention to the statement.
Appellate counsel stated in his deposition testimony that in bringing the appeal, he ruled out assigning as error ineffective assistance of counsel based on the inadvertent playing of the unredacted comment in the videotape. Appellate counsel stated that he did not feel trial counsel's performance was ineffective and that assigning error on those grounds would have been a frivolous issue. Appellate counsel testified that he talked with Jim and informed him that in all likelihood, he would not raise any issue of ineffective assistance of trial counsel in connection with the inadvertent playing of the videotaped comment, and that Jim did not request that he raise the issue.
*470 On August 8, 2008, the district court entered an order rejecting Jim's ineffective assistance of counsel claim and denying Jim's motion for postconviction relief. The district court concluded that Jim's appellate counsel was not ineffective for not raising an ineffective assistance of trial counsel claim on direct appeal, because counsel's decision not to request a more specific admonishment after the inadvertent playing of the comment was trial strategy, and that Jim had not demonstrated that there was a reasonable probability that but for the damaging statement made in the videotape, the result of the proceeding would have been different. Jim appeals.

ASSIGNMENT OF ERROR
In his brief, Jim asserts his sole assignment of error as follows: "The District Court erred in finding that Jim had not demonstrated that there was a reasonable probability but for the admission of [the] damaging statement in the video that the result would have been different and that other questioned actions by counsel were reasonable, strategic decisions."

STANDARDS OF REVIEW
[1-4] A defendant requesting postconviction relief must establish the basis for such relief, and the district court's findings will not be disturbed unless they are clearly erroneous. State v. Jackson, 275 Neb. 434, 747 N.W.2d 418 (2008). A claim that defense counsel provided ineffective assistance presents a mixed question of law and fact. Id. We review ineffective assistance of counsel claims under the two-prong inquiry mandated by Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under this inquiry, we review the lower court's factual findings for clear error. State v. Jackson, supra. Whether counsel's performance was deficient and whether that deficiency prejudiced the defendant are legal determinations that we resolve independently of the lower court's decision. Id.

ANALYSIS
Upon synthesizing Jim's assignment of error and the arguments in his brief, we understand Jim claims that trial counsel's failure to ensure the objectionable comment was excluded from the videotape, and his actions taken in response to the inadvertent playing of the comment, amounted to ineffective assistance of counsel and that appellate counsel was ineffective when he did not assign these purported errors in Jim's direct appeal. Jim's assignment of error to this court is that the district court erred when it concluded Jim did not receive ineffective appellate counsel and, therefore, denied postconviction relief.
[5-8] When analyzing a claim of ineffective assistance of appellate counsel, courts usually begin by determining whether appellate counsel failed to bring a claim on appeal that actually prejudiced the defendant. State v. Jackson, supra. In doing so, courts begin by assessing the strength of the claim appellate counsel purportedly failed to raise. Counsel's failure to raise an issue on appeal could be ineffective assistance only if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal. Id. When, as here, the case presents layered ineffectiveness claims, we determine the prejudice prong of appellate counsel's performance by focusing on whether trial counsel was ineffective under the Strickland test. State v. Jackson, supra. Under the Strickland test, a court determines (1) whether counsel's performance was deficient and (2) whether the deficient performance actually prejudiced the defendant in making his or her defense. See State v. Jackson, supra. If trial counsel was not ineffective, then the *471 defendant suffered no prejudice when appellate counsel purportedly failed to bring an ineffective assistance of trial counsel claim. Id.
As an initial matter, the State directs our attention to the Court of Appeals' opinion on direct appeal in which the substance of many of Jim's current claims was considered and rejected. The State urges us to affirm, suggesting that certain claims are not properly before this court. While we do not agree with the State's analysis, we agree that Jim's claims are without merit.
Jim now claims that trial counsel was deficient when he failed to ensure all matter intended to be excluded from the videotape was in fact excluded and that Jim was prejudiced thereby. As the State notes, the Court of Appeals considered the playing of the unredacted comment in connection with its consideration of Jim's unsuccessful argument on direct appeal wherein he claimed that the trial court had erred when it denied his motion for mistrial based on the inadvertent playing of the objectionable comment. In Jim I, the Court of Appeals acknowledged that "the objectionable testimony should have been redacted," 13 Neb.App. at 131, 688 N.W.2d at 912, but after the examination of the entire cause, concluded that no substantial miscarriage of justice occurred and that a mistrial was not indicated.
[9] Unlike his focus in his direct appeal on the trial court's ruling on the motion for mistrial, as rephrased in the current appeal, Jim claims that trial counsel's failure to ensure that the objectionable comment was excluded was deficient and prejudicial, thus, amounting to ineffective assistance of counsel, and that direct appeal counsel was ineffective for failing to raise this issue. In the present context, we observe that under the two-prong test in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), Jim must establish both a deficiency and prejudice in order to succeed on his ineffective assistance of counsel claim. As explained below, we conclude that there was no prejudice at trial, and because trial counsel was not ineffective, we agree with the district court that appellate counsel was not ineffective. Our determination that no prejudice resulted from the playing of the objectionable testimony is consistent with the Court of Appeals' opinion noted above.
[10, 11] In demonstrating prejudice, a defendant claiming ineffective assistance of counsel must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. See State v. McHenry, 268 Neb. 219, 682 N.W.2d 212 (2004). We have repeatedly observed that it is unlikely that the outcome of the proceedings would have been different where properly introduced evidence against a defendant is overwhelming. See, e.g., State v. Hunt, 254 Neb. 865, 580 N.W.2d 110 (1998).
In this case, the record, recited in greater detail above, established that Jim was the sole caregiver at the time of Layne's death, that Layne struggled and was injured thereby, and that Layne's death was caused by "asphyxiation secondary to smothering." The inadvertent reference to one of Layne's three prior injuries was incidental compared to the properly received evidence at trial regarding the event causing Layne's death. Because the properly introduced evidence against Jim was overwhelming, he failed to demonstrate a reasonable probability that but for the performance by his trial counsel, the outcome of his trial would have been different. Jim has not established the prejudice prong of his ineffective assistance of counsel claim, and we find no merit to his argument regarding the inadvertent playing of the remark in the videotape. There *472 is no reasonable probability that inclusion of this issue would have changed the result of the appeal. See State v. Jackson, 275 Neb. 434, 747 N.W.2d 418 (2008). Appellate counsel was therefore not ineffective when he did not raise this issue.
[12-15] With respect to Jim's claim that trial counsel failed to take the required steps after the objectionable comment was admitted, based on reasonable trial strategy, we find no deficiency, and therefore, trial counsel's actions in this regard were not ineffective. When considering whether trial counsel's performance was deficient, there is a strong presumption that counsel acted reasonably. See State v. Hudson, 277 Neb. 182, 761 N.W.2d 536 (2009). Furthermore, trial counsel is afforded due deference to formulate trial strategy and tactics. When reviewing a claim of ineffective assistance of counsel, an appellate court will not second-guess reasonable strategic decisions by counsel. State v. Lotter, 266 Neb. 245, 664 N.W.2d 892 (2003).
In this case, the district court found that trial counsel's decisions after the inadvertent playing of the unredacted videotaped testimony involved reasonable trial strategy and were not ineffective. The record shows that in response to the playing of the testimony, trial counsel's immediate reaction was to ask for a mistrial. Trial counsel testified in this postconviction case that after the motion was denied, in requesting an admonishment, he attempted to address the objectionable testimony without highlighting the testimony. Based on this record, the district court's finding that trial counsel's actions were "reasonable, strategic decisions" was not clearly erroneous. The district court did not err when it concluded that trial counsel's actions did not constitute deficient performance, and therefore, appellate counsel was not ineffective when he did not raise this purported error on direct appeal.

CONCLUSION
Because Jim did not establish that his trial counsel was ineffective, he failed to establish that his appellate counsel was ineffective. The district court did not err when it denied Jim's motion for postconviction relief based on the claim that he was denied effective assistance of appellate counsel. We therefore affirm.
AFFIRMED.