Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/09/2018 08:14 AM CST

State of Nebraska, appellee, v.
Dammon T. Haynes, appellant.
___ N.W.2d ___

Filed March 9, 2018.    No. S-17-031.

1. **Postconviction: Judgments: Appeal and Error.** Whether a claim raised in a postconviction proceeding is procedurally barred is a question of law which is reviewed independently of the lower court's ruling.
2. **Postconviction: Constitutional Law.** A trial court's ruling that the petitioner's allegations are refuted by the record or are too conclusory to demonstrate a violation of the petitioner's constitutional rights is not a finding of fact—it is a determination, as a matter of law, that the petitioner has failed to state a claim for postconviction relief.
3. **Postconviction: Constitutional Law: Appeal and Error.** In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief.
4. **Postconviction: Right to Counsel: Appeal and Error.** The failure of the district court to provide court-appointed counsel in a postconviction proceeding is reviewed for an abuse of discretion.
5. **Postconviction: Constitutional Law.** Postconviction relief is a very narrow category of relief, available only to remedy prejudicial constitutional violations that render the judgment void or voidable.
6. **Postconviction: Sentences: Appeal and Error.** The Nebraska Postconviction Act is intended to provide relief in those cases where a miscarriage of justice may have occurred; it is not intended to be a procedure to secure a routine review for any defendant dissatisfied with his or her sentence.
7. **Postconviction: Pleas: Waiver.** The Nebraska Postconviction Act does not provide a procedure whereby the defendant can avoid the waiver inherent to a voluntary entry of a guilty plea or plea of no contest.

8. **Pleas: Waiver: Indictments and Informations: Effectiveness of Counsel: Jurisdiction.** The voluntary entry of a guilty plea or a plea of no contest waives every defense to a charge, whether the defense is procedural, statutory, or constitutional. The only exceptions are for the defenses of insufficiency of the indictment, information, or complaint; ineffective assistance of counsel; and lack of jurisdiction.

9. **Postconviction: Appeal and Error.** On appeal from the denial of postconviction relief without an evidentiary hearing, the question is not whether the movant was entitled to relief by having made the requisite showing. Instead, it must be determined whether the allegations were sufficient to grant an evidentiary hearing.

10. **Postconviction.** The allegations in a motion for postconviction relief must be sufficiently specific for the district court to make a preliminary determination as to whether an evidentiary hearing is justified.

11. **Postconviction: Pleadings: Proof: Constitutional Law.** In a proceeding under the Nebraska Postconviction Act, the application is required to allege facts which, if proved, constitute a violation or infringement of constitutional rights, and the pleading of mere conclusions of fact or of law are not sufficient to require the court to grant an evidentiary hearing.

12. **Postconviction: Proof: Constitutional Law.** An evidentiary hearing must be granted when the facts alleged, if proved, would justify relief, or when a factual dispute arises as to whether a constitutional right is being denied.

13. **Appeal and Error.** An appellate court will not consider an issue on appeal that was not presented to or passed upon by the trial court.

14. **Postconviction: Effectiveness of Counsel: Proof.** In order to establish a right to postconviction relief based on a claim of ineffective assistance of counsel, the defendant has the burden first to show that counsel's performance was deficient; that is, counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law in the area. Next, the defendant must show that counsel's deficient performance prejudiced the defense in his or her case.

15. **Effectiveness of Counsel: Pleas.** In a plea context, deficiency depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases.

16. ____: ____. The prejudice requirement in a plea context is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading guilty.

17. ____: ____. In determining the prejudice component of alleged ineffective assistance of counsel in a plea context, the likelihood of the

defense's success had the defendant gone to trial should be considered along with other factors, such as the likely penalties the defendant would have faced if convicted at trial, the relative benefit of the plea bargain, and the strength of the State's case.

18. **Postconviction: Effectiveness of Counsel.** In a motion for postconviction relief, self-serving declarations that fail to allege specific facts that will be presented in an evidentiary hearing will not be sufficient on their own to raise a question of prejudice in an allegation of ineffective assistance of counsel.

19. **Postconviction: Pleas: Effectiveness of Counsel.** A motion for postconviction relief seeking to set aside a conviction pursuant to a plea on the grounds that it was the result of ineffective assistance of counsel must allege objective facts that raise a question of whether a rational defendant would have insisted on going to trial.

20. **Postconviction: Appeal and Error.** When considering whether the district court correctly denied a motion for postconviction relief without an evidentiary hearing, an appellate court will not consider factual allegations made for the first time on appeal.

21. **Trial: Pleas: Mental Competency.** A person is competent to plead or stand trial if he or she has the capacity to understand the nature and object of the proceedings against him or her, to comprehend his or her own condition in reference to such proceedings, and to make a rational defense.

22. ____: ____: ____. The test of mental capacity to plead is the same as that required to stand trial.

23. **Postconviction: Witnesses.** A significant degree of specificity is required in postconviction motions for claims relating to potential witnesses.

24. **Right to Counsel: Effectiveness of Counsel.** A defendant representing himself or herself pro se cannot thereafter assert his or her own incompetency.

25. **Postconviction: Appeal and Error.** Plain error cannot be asserted in a postconviction proceeding to raise claims of error by the trial court.

26. **Effectiveness of Counsel: Appeal and Error.** Counsel's failure to raise an issue on appeal could be ineffective assistance only if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal.

Appeal from the District Court for Douglas County: SHELLY R. STRATMAN, Judge. Affirmed.

Dammon T. Haynes, pro se.

Douglas J. Peterson, Attorney General, and Sarah E. Marfisi for appellee.

Heavican, C.J., Wright, Cassel, Stacy, and Funke, JJ.

Heavican, C.J.

## I. NATURE OF CASE

This is an appeal from the denial of postconviction relief without an evidentiary hearing or the appointment of counsel. The petitioner makes numerous arguments that his trial counsel, who also represented him on direct appeal, were ineffective. Petitioner also argues that he was sentenced to nonexistent crimes of being a habitual criminal, which he asserts resulted in void sentences. We affirm the judgment below.

## II. BACKGROUND

### 1. Charges

Dammon T. Haynes was charged with three counts under case No. CR14-701. Count I charged him with stalking, second offense, in violation of Neb. Rev. Stat. §§ 28-311.03 and 28-311.04(2)(a) (Reissue 2008), a Class IV felony. Count II charged him with terroristic threats, in violation of Neb. Rev. Stat. § 28-311.01(1)(a) (Reissue 2008), a Class IV felony. Count III, habitual criminal, described that Haynes has twice been convicted of a crime, sentenced, and committed to prison for terms of not less than 1 year each and, thus, "is a Habitual Criminal as described in Neb. Rev. Stat. §29-2221."

At the same time, under case No. CR14-1202, Haynes was charged with two counts. Under count I, he was charged with tampering with a witness, in violation of Neb. Rev. Stat. § 28-919(1) (Reissue 2008), a Class IV felony. Count II, habitual criminal, described that Haynes has twice been convicted of a crime, sentenced, and committed to prison for terms of not less than 1 year each and, thus, "is a Habitual Criminal as described in Neb. Rev. Stat. §29-2221."

Under other case numbers, Haynes was charged with possession of a controlled substance, witness tampering, and identity theft.

## 2. Pleas

Haynes entered into a plea agreement with the State. In case No. CR14-701, Haynes pled no contest to the charges of count I, stalking, second offense, and count II, terroristic threats. In case No. CR14-1202, Haynes pled no contest to count I, tampering with a witness.

The pleas were negotiated in exchange for dismissal of the other charges, under different case numbers, of possession of a controlled substance, witness tampering, and identity theft. The State also agreed not to file any further charges based on Haynes' conduct up to the date of the pleas. The State had apparently been preparing to charge Haynes with 16 additional misdemeanor counts.

The day Haynes pled to the charges, the State entered into evidence a psychiatric report demonstrating that Haynes was competent and the court specifically found Haynes competent to stand trial.

The court considered cases Nos. CR14-701 and CR14-1202 together during the plea colloquy, as well as during the enhancement and sentencing hearing.

During the plea colloquy, the court confirmed with Haynes that he understood the nature of the charges, the terms of the plea agreement, the sentencing range for the crimes, and the possible habitual criminal enhancement. The court explained that the charges of terroristic threats and tampering with a witness were subject to habitual criminal enhancement, while the charge of stalking, second offense, was not.

Haynes affirmed that his pleas were freely and voluntarily made. Haynes stated that he had been given enough time to discuss the case with his counsel and that he was satisfied with their representation.

As a factual basis for the pleas, the State provided that it would have adduced evidence that on or about January 22 through February 12, 2014, Haynes harassed and threatened the victim, his ex-girlfriend, after she broke off their relationship and moved in with her mother. Haynes continued to call, drive by the victim's house, and send text messages, even after

a protection order was in place. Some messages were sent to the victim's mother, advising her to keep the victim away from the "back windows," because "he attempted to get his boys to chill," but "the call was already made." On one occasion, the victim and her mother witnessed Haynes drive by and point his fingers out the window as if they were a gun. On another occasion, the victim and her mother witnessed Haynes drive by and yell, "[H]ey bitch, I'm coming back. This house is going to get shot up tonight." During the same time period, Haynes filled out change of address forms for the victim without her consent, pretended to be the victim in order to have her cable turned off, and sent "jitney cabs" to the victim's house during all hours of the night.

After being jailed on the charges, Haynes made approximately 44 calls to the victim, using another inmate's telephone number. During the conversations, Haynes asked the victim not to go to court. Haynes also sent letters through other inmates to contacts on the outside, asking them to tell the victim to stop talking to law enforcement and prosecutors.

The court found that Haynes' pleas of no contest were entered freely, knowingly, intelligently, and voluntarily. Haynes was adjudged guilty of the charges of stalking, terroristic threats, and tampering with a witness.

### 3. Sentencing

For purposes of habitual criminal enhancement, the State entered into evidence prior convictions, and the court found the prior convictions valid and supporting enhancement. The presentence investigation report (PSI) indicated an extensive criminal history, including convictions for assault, terroristic threats, stalking, harassment by telephone, intimidation by telephone, and violations of protection orders. The victims were past girlfriends and an ex-wife. The PSI reflects that Haynes has been arrested 23 times for crimes of domestic violence and has had 16 protection orders filed against him by 14 different people in the last 18 years. Attached to the PSI were several victim impact statements related to prior convictions.

Defense counsel asked the court to order a new PSI on the grounds that the officer who prepared the PSI was biased against Haynes. Counsel explained that the investigator had been Haynes' probation officer in 1999 and had prepared a PSI in another case in 2009. Counsel suggested that someone else would be able to "give a more independent evaluation." The court denied the motion, noting that although the report demonstrated familiarity with Haynes, it was mostly a factual recitation of past and present charges.

The State argued at the sentencing hearing that the court should consider Haynes' past convictions and the domestic abuse and stalking of former girlfriends and his ex-wife.

The district court observed that Haynes had an extensive criminal history and was "one of the worst" domestic violence offenders the court had ever seen. The court stated that it had reached this conclusion based on the factual statements in the PSI and the victim statements, not on any commentary in the PSI reflecting the investigator's personal familiarity with Haynes.

In case No. CR14-701, the court sentenced Haynes to concurrent sentences of 12 to 24 years' imprisonment, with 289 days' credit for time served. In case No. CR14-1202, the court sentenced Haynes to 12 to 24 years' imprisonment, to be served consecutively to the sentences in case No. CR14-701.

## 4. DIRECT APPEAL

Haynes filed a direct appeal, represented by the same defense counsel as at the trial stage. He asserted on appeal that the sentences were excessive.

The Nebraska Court of Appeals, in a memorandum opinion, found that the sentences were not excessive.[1] However, it vacated and remanded that portion of the sentence in case No. CR14-701 that imposed habitual criminal enhancement on the charge of stalking, second offense. The court noted

---

[1] *State v. Haynes*, Nos. A-14-1082, A-14-1083, 2015 WL 4626756 (Neb. App. Aug. 4, 2015) (selected for posting to court website).

that because the sentences were concurrent, the error was for all practical purposes harmless, but nevertheless needed to be corrected.[2]

### 5. Motion for Postconviction Relief

Thereafter, Haynes, representing himself pro se, filed a motion for postconviction relief. Haynes asserted 12 acts of ineffective assistance of counsel. He generally alleged that but for these acts of ineffective assistance of counsel, he would have insisted on going to trial.

First, Haynes alleged that counsel was deficient for failing to discuss, apprise, or review "any of the discovery turned over by the state." Second, Haynes alleged counsel failed to investigate, interview, or depose other "witnesses," who would have testified that his relationship with the victim was "wholesome" and "not the negative transgression or aggression the state and police officials deploy." Third, Haynes alleged that counsel should have driven by the victim's residence to obtain more "detailing descriptive streets." Fourth, Haynes alleged that counsel was deficient in failing to locate, interview, or depose the victim, who would have given "a very different version of events that [sic] what the state produced" and "would have testified that the charges lodged against [Haynes] were unfounded, and concocted by her mother."

Fifth, Haynes alleged that there were several questions that he asked counsel, which he listed, to "formulate a defense" in Haynes' favor. Sixth, Haynes alleged that counsel was ineffective by "failing to apprise [Haynes] of the nature of the charges lodged against him; the consequences of the charges [Haynes] was said to had [sic] committed; and a reasonable explanation as to whether or not he should proceed to trial on those charges." Seventh, Haynes asserted that counsel should have challenged law enforcement's warrantless seizure of his outgoing mail while in jail and use of that mail to contact recipients and discourage their continued communication with him.

---

[2] *Id.*

Eighth, Haynes alleged that 7 months of "solitary confinement," and its restrictions, particularly telephone restrictions, limited his ability to contact counsel and thereby "impeded [Haynes'] participation in his case," allegedly denying him due process. The restrictions also limited his access to outside sources who could have allegedly helped him "prepare and help counsel's [sic] with a propper [sic] defense" and rendered it "impossible for [Haynes] to obtain information that would have undermined the states [sic] case via the charges." He asserted that counsel was ineffective for failing to challenge these restrictions. Haynes also generally asserted that the restrictive confinement rendered his plea involuntary.

Ninth, Haynes alleged under the heading "Failure to Investigate and Prepare Defense" that the county attorney met with the victim before charges were filed. Tenth, Haynes asserted that counsel was deficient in failing to assert on direct appeal that the presentence investigator was biased against him. Eleventh, Haynes asserted that counsel should have raised on appeal the allegation that his plea was not supported by an adequate factual basis.

Twelfth, Haynes alleged counsel was ineffective for failing to raise as error on direct appeal the habitual criminal count in case No. CR14-701. Haynes theorized, without citation to any relevant authority, that all charges under the same information must be subject to habitual criminal enhancement in order for the habitual criminal statute to legally apply to the case.

Haynes also made several allegations of "plain error" that did not appear to relate to an ineffective assistance of counsel claim.

The allegations of Haynes' motion will be set forth in further detail in our opinion.

## 6. DISTRICT COURT ORDER

The district court denied the motion for postconviction relief without an evidentiary hearing or the appointment of counsel.

With respect to the claims of ineffective assistance of counsel, the court stated that Haynes had failed to set forth specific facts relating to prejudice and only generically offered the self-serving declaration that but for the deficient performance, he would have insisted on going to trial.

The court elaborated that on all claims relating to a failure to investigate, Haynes did "not state what additional evidence would have been gathered, or how a different result would have been obtained." The court stated that this was reason alone to deny the motion without an evidentiary hearing on the allegations.

Alternatively to the lack of specificity regarding prejudice, the court reasoned, regarding the telephone restrictions during administrative confinement, that Haynes failed to set forth how defense counsel could have challenged a decision by the Department of Correctional Services. The court noted that counsel is not ineffective for failing to bring a motion that does not have merit.[3] Regarding the claim that counsel failed to inform Haynes of the nature of the charges, the court alternatively reasoned that the plea colloquy refuted such a claim.[4]

As for the allegations of prosecutorial misconduct and the presentence investigator's conflict of interest, the court concluded Haynes had "failed to set forth any facts or law establishing inclusion of such issues would have 'changed the result of the appeal.'"[5]

With regard to any claim of "plain error," separate from Haynes' ineffective assistance of counsel claims, the court relied on our statement in *State v. Sepulveda*[6] that plain error cannot be asserted in a postconviction proceeding to raise claims of error by the trial court.

Haynes appeals.

---

[3] See *State v. McLeod*, 274 Neb. 566, 741 N.W.2d 664 (2007).

[4] See, *State v. Dragon*, 287 Neb. 519, 843 N.W.2d 618 (2014); *State v. Vo*, 279 Neb. 964, 783 N.W.2d 416 (2010).

[5] See *State v. Jim*, 278 Neb. 238, 768 N.W.2d 464 (2009).

[6] *State v. Sepulveda*, 278 Neb. 972, 775 N.W.2d 40 (2009).

## III. ASSIGNMENTS OF ERROR

Largely verbatim, Haynes asserts that (1) his claims of ineffective assistance of counsel are "meritable," warranting the need of an evidentiary hearing to show cause; (2) the grounds and claims submitted for postconviction relief exhibit "colorable claims" worthy of the relief sought; (3) the district court erred in denying Haynes' motion for postconviction relief; (4) the district court erred in denying Haynes' motion to appoint counsel; (5) the district court erred in allowing the State to use false and highly prejudicial claims that Haynes sexually assaulted women in the past; (6) the district court erred when overruling Haynes' request to remove the presentence investigator due to bias; and (7) the district court erred in allowing the State to place Haynes in "[s]olitary [c]onfinement" during the pretrial stages, prohibiting him from contacting his attorneys by telephone.

## IV. STANDARD OF REVIEW

[1] Whether a claim raised in a postconviction proceeding is procedurally barred is a question of law which is reviewed independently of the lower court's ruling.[7]

[2,3] A trial court's ruling that the petitioner's allegations are refuted by the record or are too conclusory to demonstrate a violation of the petitioner's constitutional rights is not a finding of fact—it is a determination, as a matter of law, that the petitioner has failed to state a claim for postconviction relief.[8] Thus, in appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief.[9]

---

[7] *State v. Harris*, 267 Neb. 771, 677 N.W.2d 147 (2004).

[8] *State v. Determan*, 292 Neb. 557, 873 N.W.2d 390 (2016).

[9] *Id.*

[4] We review the failure of the district court to provide court-appointed counsel in a postconviction proceeding for an abuse of discretion.[10]

## V. ANALYSIS

Haynes appeals from the denial of postconviction relief without an evidentiary hearing or the appointment of counsel. He sought to set aside his convictions, which were entered pursuant to pleas of no contest. He also alleged errors in sentencing. The district court concluded that Haynes had failed to allege sufficient facts that, even if proved true at an evidentiary hearing, would render his judgment void or voidable. As to certain allegations, the court also found them to be affirmatively refuted by the record.

[5,6] Postconviction relief is a very narrow category of relief, available only to remedy prejudicial constitutional violations that render the judgment void or voidable.[11] The Nebraska Postconviction Act is intended to provide relief in those cases where a miscarriage of justice may have occurred; it is not intended to be a procedure to secure a routine review for any defendant dissatisfied with his or her sentence.[12]

[7,8] The Nebraska Postconviction Act likewise does not provide a procedure whereby the defendant can avoid the waiver inherent to a voluntary entry of a guilty plea or plea of no contest. The voluntary entry of a guilty plea or a plea of no contest waives every defense to a charge, whether the defense is procedural, statutory, or constitutional.[13] "The only exceptions are for the defenses of insufficiency of the indictment,

---

[10] See *State v. Rehbein*, 235 Neb. 536, 455 N.W.2d 821 (1990).

[11] See, *State v. Barnes*, 272 Neb. 749, 724 N.W.2d 807 (2006); *State v. Lytle*, 224 Neb. 486, 398 N.W.2d 705 (1987); Neb. Rev. Stat. § 29-3001 (Reissue 2016).

[12] See *State v. Robertson*, 294 Neb. 29, 881 N.W.2d 864 (2016).

[13] *State v. Trackwell*, 250 Neb. 46, 547 N.W.2d 471 (1996); *State v. Dreimanis*, 8 Neb. App. 362, 593 N.W.2d 750 (1999).

information, or complaint; ineffective assistance of counsel; and lack of jurisdiction."[14]

[9] On appeal from the denial of postconviction relief without an evidentiary hearing, the question is not whether the movant was entitled to relief by having made the requisite showing.[15] Instead, we must determine whether the allegations were sufficient to grant an evidentiary hearing.[16] Section 29-3001(2) states:

> Unless the motion and the files and records of the case show to the satisfaction of the court that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, and determine the issues and make findings of fact and conclusions of law with respect thereto.

[10-12] But the allegations in the motion for postconviction relief must be sufficiently specific for the district court to make such a preliminary determination as to whether an evidentiary hearing is justified.[17] In a proceeding under the Nebraska Postconviction Act, the application is required to allege facts which, if proved, constitute a violation or infringement of constitutional rights, and the pleading of mere conclusions of fact or of law are not sufficient to require the court to grant an evidentiary hearing.[18] An evidentiary hearing must be granted when the facts alleged, if proved, would justify relief, or when a factual dispute arises as to whether a constitutional right is being denied.[19] In the absence of alleged facts that would render the judgment void or voidable, the proper course is to

---

[14] *State v. Start*, 239 Neb. 571, 574, 477 N.W.2d 20, 22-23 (1991). See, also, *State v. Russell*, 239 Neb. 979, 479 N.W.2d 798 (1992); *State v. Wiemer*, 3 Neb. App. 821, 533 N.W.2d 122 (1995).

[15] See *State v. Yos-Chiguil*, 281 Neb. 618, 798 N.W.2d 832 (2011).

[16] See *id.*

[17] See *State v. Lytle, supra* note 11.

[18] *State v. Turner*, 194 Neb. 252, 231 N.W.2d 345 (1975).

[19] See *State v. Silvers*, 255 Neb. 702, 587 N.W.2d 325 (1998).

dismiss the motion for postconviction relief for failure to state a claim.[20]

[13] With these principles in mind, we turn to Haynes' arguments on appeal. We consider only those arguments that were both adequately assigned and argued in his appellate brief. This court will not consider an issue on appeal that was not presented to or passed upon by the trial court.[21]

## 1. Alleged Ineffective Assistance of Counsel Leading to Pleas of No Contest

Haynes principally asserts ineffective assistance of counsel. He argues that but for these acts of ineffective assistance of counsel, there was a "great probability," sufficient to undermine confidence in the outcome, that Haynes would have insisted on going to trial.[22] Because Haynes was represented both at trial and on direct appeal by the same lawyer or lawyers from the same office, this motion for postconviction relief is his first opportunity to assert ineffective assistance of counsel.

[14] In order to establish a right to postconviction relief based on a claim of ineffective assistance of counsel, the defendant has the burden first to show that counsel's performance was deficient; that is, counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law in the area.[23] Next, the defendant must show that counsel's deficient performance prejudiced the defense in his or her case. The two prongs of this test, deficient performance and prejudice, may be addressed in either order.[24]

[15,16] In a plea context, deficiency depends on whether counsel's advice was within the range of competence demanded

---

[20] See *State v. Ryan*, 287 Neb. 938, 845 N.W.2d 287 (2014).

[21] *Walters v. Sporer*, 298 Neb. 536, 905 N.W.2d 70 (2017).

[22] Brief for appellant at 14.

[23] *State v. McLeod, supra* note 3.

[24] *Id*.

of attorneys in criminal cases.[25] The prejudice requirement in a plea context is satisfied if the defendant shows a "reasonable probability" that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading guilty.[26]

[17] The likelihood of the defense's success had Haynes insisted on going to trial is relevant to this prejudice analysis.[27] It is relevant to the consideration of whether "'a rational defendant [would have] insist[ed] on going to trial.'"[28] The likelihood of the defense's success had the defendant gone to trial should be considered along with other factors, such as the likely penalties the defendant would have faced if convicted at trial, the relative benefit of the plea bargain, and the strength of the State's case.[29]

[18] At an evidentiary hearing, "[s]elf-serving declarations that [the claimant] would have gone to trial will not be enough; he must present objective evidence showing a reasonable probability that he would have insisted on going to trial."[30] Neither will such self-serving declarations be sufficient on their own to state a claim requiring an evidentiary hearing.[31]

[19] The district court was correct that a motion for post-conviction relief seeking to set aside a conviction pursuant to a plea on the grounds that it was the result of ineffective

---

[25] See *State v. Zarate*, 264 Neb. 690, 651 N.W.2d 215 (2002).

[26] *State v. Lee*, 290 Neb. 601, 602, 861 N.W.2d 393, 395 (2015). See, also, e.g., *State v. Armendariz*, 289 Neb. 896, 857 N.W.2d 775 (2015); *State v. Yos-Chiguil, supra* note 15; *State v. Glover*, 278 Neb. 795, 774 N.W.2d 248 (2009); *State v. McLeod, supra* note 3; *State v. Barnes, supra* note 11; *State v. Deckard*, 272 Neb. 410, 722 N.W.2d 55 (2006); *State v. Silvers, supra* note 19.

[27] See *State v. Yos-Chiguil, supra* note 15.

[28] *Id.* at 631, 798 N.W.2d at 844, quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000).

[29] See *State v. Yos-Chiguil, supra* note 15.

[30] *Id.* at 632, 798 N.W.2d at 844.

[31] See *State v. Barrera-Garrido*, 296 Neb. 647, 895 N.W.2d 661 (2017).

assistance of counsel must allege objective facts that raise a question of whether a rational defendant would have insisted on going to trial. And we agree with the district court that most of Haynes' claims failed to allege facts raising a question of whether a rational defendant would have insisted on going to trial. Other allegations are affirmatively refuted by the trial record. None of the allegations warranted an evidentiary hearing.

We address each of the allegations in turn.

### (a) Meeting Between Victim and County Attorney

Haynes first argues that counsel was ineffective for failing to challenge the county attorney's meeting with the victim before charges were filed. In his motion for postconviction relief, Haynes alleged under the heading "Failure to Investigate and Prepare Defense" that the county attorney met with the victim before charges were filed. He asserted this violated due process, because it gave the county attorney first-hand information and gave the county attorney time to "plant fear" in the victim.

Haynes did not make factual allegations as to how this "fear" affected the truthfulness of the victim's account to law enforcement or how it otherwise impacted his defense. In other words, Haynes failed to allege facts raising a dispute as to whether a rational defendant would have insisted on going to trial.

Haynes' attempt to focus on counsel's failure to raise this issue on direct appeal does not change our analysis. As stated, in an appeal seeking to reverse a conviction pursuant to a plea of no contest, the appellate court will consider only claims of insufficiency of the indictment, information, or complaint; ineffective assistance of counsel; and lack of jurisdiction.[32] Haynes' motion failed to raise the prospect that had the

---

[32] *State v. Start, supra* note 14. See, also, *State v. Russell, supra* note 14; *State v. Wiemer, supra* note 14.

purported due process issue been raised on direct appeal, it would have changed the result.[33] But, in fact, Haynes' allegation amounts simply to an allegation of ineffective assistance of counsel at trial, because trial counsel representing the defendant on appeal cannot be expected to raise his or her own ineffectiveness in failing to present an issue at trial.[34] And Haynes' counsel did not bring this alleged due process issue to the attention of the district court before Haynes entered his plea.

### (b) Failure to Discuss
### State's Discovery

Haynes next asserts on appeal that counsel "failed to discuss, apprise, or review any of the discovery turned over by the [S]tate"[35] and that had counsel done so, counsel would have known the police reports were filed by the victim's mother.

Haynes did not assert in his motion for postconviction relief, however, that counsel would have discovered that the police reports were filed by the victim's mother. We note that Haynes fails to explain how the fact that the victim's mother filed the police reports would have undermined the State's case against Haynes and thereby created a reasonable probability that he would have insisted on going to trial. But, regardless, we will not consider arguments made for the first time on appeal.[36]

Haynes' assertion in his motion that counsel failed to discuss with him "any of the discovery" turned over by the State was insufficiently specific. Without an allegation as to what the State's discovery evidence was, Haynes failed to allege sufficient facts pertaining to whether a rational defendant would have insisted on going to trial.

---

[33] See *State v. Jim, supra* note 5.

[34] See, e.g., *State v. Payne*, 289 Neb. 467, 855 N.W.2d 783 (2014).

[35] Brief for appellant at 13.

[36] See *State v. Thomas*, 262 Neb. 138, 629 N.W.2d 503 (2001).

(c) Questions Presented to
Defense Counsel

Next, Haynes states in his brief that there were "many questions asked to counsel."[37] He lists these questions as including: (1) "Why are all of the imposed restrictions being placed on me given the fact that the alleged victim refuses to help prosecution?" (2) "Why is the Habitual Criminal tag being sought agains [sic] me even with my charges being the low end class 4 felonies?" (3) With no physical voilence [sic] associated with this case why is the County Attorney not allowing the alleged victim and myself communicate [sic] for the well being of our young daughter?" and (4) "What are my chance [sic] if I proceed to trial given the fact that the alleged victim has shown no interest in helping build a case?"[38]

This list of questions asked is less an argument than a statement of purported historical fact. The fact that this list was presented somewhere under the heading of "Failure to Investigate and Prepare Defense" does not make it an argument. We find this an insufficient argument for this court to be able to address it.[39]

However, we note that this same insufficiency clearly supported the district court's conclusion that Haynes had failed to state a claim warranting an evidentiary hearing.

(d) Administrative Confinement
and Outgoing Mail

Haynes asserts that counsel was ineffective for failing to challenge his administrative confinement. He focuses primarily on restrictions on his ability to make telephone calls. Haynes argues that he was prejudiced by telephone restrictions, because they impeded his ability to call counsel and prevented him from calling unidentified persons who might

---

[37] Brief for appellant at 13.

[38] *Id*.

[39] See *State v. Wagner*, 295 Neb. 132, 888 N.W.2d 357 (2016).

have helped him procure evidence of an alibi. This alibi evidence supposedly would have entailed train tickets and timecards for his job, demonstrating that he was working or out of town "during times that several Police reports were filed."[40]

Somewhat relatedly, Haynes asserts that counsel should have challenged law enforcement officers' warrantless confiscation of his outgoing mail while in jail and their contact with the recipients, encouraging them not to have further contact with Haynes. Again, Haynes believes this hindered his ability to procure evidence for his defense.

As the district court noted, Haynes failed to assert by what motion or action his counsel could have challenged such a decision of the Department of Correctional Services. While Haynes seems to classify these acts as prosecutorial misconduct, he fails to cite to any authority for that characterization.

[20] Haynes likewise failed to raise sufficiently specific facts demonstrating that a reasonable person would have insisted on going to trial, had counsel successfully challenged his administrative confinement. As with other assertions of ineffective assistance of counsel, Haynes has attempted to add more specific factual allegations for the first time in his appellate brief. When considering whether the district court correctly denied the motion without an evidentiary hearing, we will not consider factual allegations made for the first time on appeal.[41] Haynes did not allege in his motion that train tickets and timecards would have presented an alibi. Rather, he generically alleged that he was hindered in his defense.

In any event, Haynes failed to raise a question of prejudice from his telephone restrictions or law enforcement's discouraging mail recipients from further contact with Haynes, because he did not allege that counsel was unable to contact him, that he was unable to contact counsel through other means, or that

---

[40] Brief for appellant at 15.

[41] See *Walters v. Sporer, supra* note 21.

counsel was unable to conduct an adequate discovery without Haynes' direct communication with these unidentified outside sources. Finally, whatever train tickets and timecards could have been procured, Haynes does not assert that these would have demonstrated he was nowhere in the vicinity of the crimes at any point from January 22 to February 12, 2014, as alleged in the information.

In other words, the allegations relating to counsel's failure to challenge administrative confinement, confiscation of his mail, and contact with mail recipients, failed to sufficiently raise a triable issue warranting an evidentiary hearing.

Haynes seems to generally argue that counsel failed to protect his mental health, noting that "[t]hose surroundings with no outside communication can cause serious issues mentally."[42] But Haynes does not assert that he actually suffered from such serious mental issues. He merely broadly states that "[t]he plea . . . was not done knowingly, willingly, or voluntarily, due to the restrictions placed on [Haynes], along with [Haynes'] being placed in solitary confinement for over seven months . . . ."[43]

[21,22] Even if we generously read these arguments as asserting that Haynes was incompetent—and that counsel was ineffective for failing to seek a competency hearing or moving to withdraw Haynes' plea—Haynes' motion failed to allege facts that would have raised doubts as to his competency. A person is competent to plead or stand trial if he or she has the capacity to understand the nature and object of the proceedings against him or her, to comprehend his or her own condition in reference to such proceedings, and to make a rational defense.[44] The test of mental capacity to plead is the same as that required to stand trial.[45]

---

[42] Brief for appellant at 6.

[43] *Id*. at 14.

[44] *State v. Vo, supra* note 4.

[45] *Id*.

Haynes' allegations, even if true, would not establish a "threshold level of doubt"[46] concerning his competency that would make counsel's inaction deficient. Haynes failed to allege what facts would have brought to counsel's attention an incapacity to understand the nature and object of the proceedings against him, to comprehend his own condition in reference to such proceedings, and to make a rational defense.[47] Haynes' allegation that he was in "solitary confinement," standing alone, is not a fact that would cause a criminal lawyer with ordinary training and skill in the area to question a defendant's competency.

Finally, the record refutes any allegation that Haynes was incompetent. A medical evaluation established Haynes' competency, and the district court specifically found Haynes competent before hearing his plea. Haynes' responses to questions from the court during the plea colloquy were appropriate and reflected his knowledge that he was appearing in court for the purpose of entering a no contest plea and that he understood the consequences of such action as they were explained to him by the judge.

The district court was correct in denying an evidentiary hearing on the claims relating to his administrative confinement and confiscation of his outgoing mail while in jail.

### (e) Failure to Visit Apartment Complex

Haynes asserts that counsel was somehow ineffective for failing to visit the apartment complex where he, the victim, and the victim's mother all allegedly lived. He asserts that counsel should have been able to detail the "descriptive streets or locate where [Haynes] was said to venture driving by [the victim's] home."[48] These allegations do not bring into question either counsel's deficiency or any possible prejudice.

---

[46] *State v. Griffin*, 20 Neb. App. 348, 355, 823 N.W.2d 471, 477 (2012).

[47] See, *State v. Vo, supra* note 4; *State v. Johnson*, 4 Neb. App. 776, 551 N.W.2d 742 (1996).

[48] Brief for appellant at 13.

(f) Failure to Interview
Character Witnesses

Haynes argues that counsel failed to interview "witnesses" he informed counsel of, who would have stated that he was the sole provider for the household and that "ill feelings" of the victim's mother "caused these issues to happen."[49] His allegations in the motion for postconviction relief stated somewhat similarly that "witnesses" would have said Haynes and the victim had "a relationship in which [Haynes] was the sole provider for the household in wholesome relations and not the negative transgression or aggression the state and police officials deploy."

[23] We require a significant degree of specificity in postconviction motions for claims relating to potential witnesses.[50] And, because this case involves a plea, any claim based on potential witnesses is all the more hypothetical and subject to scrutiny. We have explained:

"The plea process brings to the criminal justice system a stability and a certainty that must not be undermined by the prospect of collateral challenges in cases not only where witnesses and evidence have disappeared, but also in cases where witnesses and evidence were not presented in the first place."[51]

Haynes did not provide the names or descriptions of the uncalled witnesses. Haynes describes the general nature of the testimony the witnesses would have provided, but this potential testimony generally vouching for the wholesome and non-aggressive nature of Haynes' relationship with the victim only marginally impacts the likelihood of the defense's success had Haynes insisted on going to trial.

---

[49] *Id*. at 12.

[50] See, *State v. Mora*, 298 Neb. 185, 903 N.W.2d 244 (2017); *State v. Abdullah*, 289 Neb. 123, 853 N.W.2d 858 (2014).

[51] *State v. Yos-Chiguil, supra* note 15, 281 Neb. at 634, 798 N.W.2d at 845 (Heavican, C.J., concurring), quoting *Premo v. Moore*, 562 U.S. 115, 131 S. Ct. 733, 178 L. Ed. 2d 649 (2011).

More to the point, Haynes apparently discussed these potential witnesses with counsel and was able to consider with counsel the hypothetical effect of their potential testimony before deciding to plead. Thus, counsel determined as a matter of strategy that it was unnecessary to depose these witnesses to confirm Haynes' assertion as to what they would say regarding their perception of Haynes' relationship with the victim. The allegation in the motion that counsel had not "call[ed], locate[d] and acquire[d] witnesses," before Haynes decided to accept the State's plea bargain offer, fails to call into question whether a reasonable person would have instead insisted on going to trial.

### (g) Failure to Interview
### and Depose Victim

Lastly, Haynes asserts that had counsel interviewed and deposed the victim, she would have said the allegations were "unfounded" and revealed that her mother made all the police reports. In the motion for postconviction relief, Haynes similarly alleged that counsel was ineffective for failing to "locate, interview or depose the said victim" and that "[h]ad she been located, interviewed, or deposed, she would have testified that the charges lodged against [Haynes] were unfounded, and concocted by her mother . . . [w]hich all led to . . . a coerced and minipulated [sic] plea . . . at the ill advice and ineffective representation of counsel's." Haynes concluded that but for defense counsel's ineffectiveness, there was a "great probability" and a "high probability," "sufficient to undermine confidence in the outcome," that Haynes would not have pled and would have gone to trial.

[24] Haynes had moved, pro se, to depose the victim. But at the hearing to accept his plea, Haynes affirmed to the court that he wished to withdraw his motion to depose the victim. The record is as follows:

[Defense counsel]: . . . At this time we move to withdraw the Notice and Motion to Take Deposition that was filed by my client on August 4th. We've had an

opportunity to talk to my client. It was a pro se motion, and he understands what is going on here and shares in our wish to withdraw that motion.

THE COURT: Is that correct . . . ?

[Haynes]: Yes, ma'am.

A defendant representing himself or herself pro se cannot thereafter assert his or her own incompetency.[52] Though he had counsel, Haynes acted pro se in moving to depose the victim and in withdrawing that motion. Haynes spoke for himself at the hearing. He cannot now claim in his motion for postconviction relief that his decision not to depose the victim was in error.

## 2. Sentencing

We turn now to several arguments Haynes makes concerning his sentencing.

### (a) Habitual Criminal Enhancement Must Apply to All or None

First, Haynes asserts that counsel was ineffective for failing to challenge habitual criminal enhancement on the grounds that there can be no enhancement unless all the charges in the information are amendable to habitual criminal enhancement. He concludes that because, under case No. CR14-701, the stalking charge was not amendable to habitual criminal enhancement, neither was count II, terroristic threats. The only law cited by Haynes in support of this conclusion is that cited by the Court of Appeals in holding that second-offense stalking could not be doubly enhanced through the habitual criminal statute.

There is simply no merit to Haynes' legal assertion that all charges in an information must be amendable to habitual criminal enhancement in order for any charge to be subject to enhancement under the habitual criminal statute. We therefore

---

[52] See *State v. Dunster*, 278 Neb. 268, 769 N.W.2d 401 (2009).

agree with the district court that this allegation fails to raise any issue of deficient performance or prejudice.

### (b) Void Sentence for "Crime" of Being Habitual Criminal

Haynes further argues, for the first time on appeal, that his sentences were void, suffering the same infirmities as found in *Meyer v. Frakes*.[53] Because a void judgment can be attacked at any time in any proceeding,[54] we will address this argument despite Haynes' failure to raise it below.

The habitual criminal statute states that "the facts with reference thereto shall be charged in the indictment or information which contains the charge of the felony upon which the accused is prosecuted."[55] Thus, there is no error in setting forth habitual criminal status as a count in the information. But Haynes asserts that, as in *Meyer v. Frakes*,[56] he was convicted of the crime of being a habitual criminal and was separately sentenced for such crime. In *Meyer*, we said that "a separate sentence for the nonexistent crime of being a habitual criminal is void," because "[t]here is no such offense as being a habitual criminal."[57]

The record demonstrates that unlike the defendant in *Meyer*, Haynes was not, in fact, convicted and sentenced of being a habitual criminal. He did not plead no contest to being a habitual criminal. The court did not convict him of being a habitual criminal. And the court did not issue a separate sentence for the "crime" of being a habitual criminal. Instead, as is proper, the court enhanced Haynes' sentences for the crimes of terroristic threats and tampering with a witness. We find no merit to Haynes' argument that pursuant to *Meyer*, his sentences were void.

[53] *Meyer v. Frakes*, 294 Neb. 668, 884 N.W.2d 131 (2016).

[54] *Johnson v. Johnson*, 282 Neb. 42, 803 N.W.2d 420 (2011).

[55] Neb. Rev. Stat. § 29-2221(2) (Reissue 2016).

[56] *Meyer v. Frakes, supra* note 53.

[57] *Id.* at 673-74, 884 N.W.2d at 136-37.

### (c) Prosecutorial Misconduct and
### Other Alleged Sentencing Errors

Lastly, Haynes argues several points of alleged prosecutorial misconduct or trial error during the sentencing hearing, unattached to any claim of ineffective assistance of counsel or any claim that his plea was involuntary. He presented these below as "plain error." The allegations relate to the court's consideration of his relationship with past girlfriends, allegedly false letters from past girlfriends, allegedly false accusations by the State of past sexual assaults, and a letter written from jail to an adult son. In sum, Haynes argues that the State improperly presented and the court improperly considered false "prior bad acts." He also argues that a letter to his son should not have been considered, because it had been seized without a warrant.

[25] As the district court correctly noted, plain error cannot be asserted in a postconviction proceeding to raise claims of error by the trial court.[58] Haynes cannot avoid the strictures of an ineffective assistance of counsel claim by reframing the allegation as plain error. Consideration of plain error occurs only at the discretion of an appellate court.[59]

[26] The only allegation of ineffective assistance of counsel raised in terms of sentencing is counsel's failure to pursue on appeal the objection to the PSI investigator's alleged bias. Counsel's failure to raise an issue on appeal could be ineffective assistance of counsel only if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal.[60] We agree with the district court that a claim based on the alleged bias of the PSI investigator would not have been successful on appeal. This is especially true because the district court stated that it was not considering any statement in the PSI report that could have derived from

---

[58] *State v. Sepulveda, supra* note 6.

[59] See *id.*

[60] *State v. Sellers*, 290 Neb. 18, 858 N.W.2d 577 (2015).

the investigator's prior contact with Haynes. Therefore, this allegation, like the others, does not raise a claim warranting an evidentiary hearing.

### 3. Appointment of Counsel

Under the Nebraska Postconviction Act, it is within the discretion of the trial court as to whether counsel shall be appointed to represent the defendant.[61] When the assigned errors in a postconviction petition before the district court contain no justiciable issues of law or fact, it is not an abuse of discretion to fail to appoint counsel for an indigent defendant.[62] Based upon our conclusion that Haynes' postconviction motion presented no justiciable issues for postconviction relief, we conclude that the district court did not abuse its discretion in denying his motion for appointment of counsel.

### VI. CONCLUSION

For the foregoing reasons, we affirm the order of the district court denying Haynes' motion for postconviction relief without an evidentiary hearing or the appointment of counsel.

AFFIRMED.

KELCH, J., participating on briefs.

WRIGHT and MILLER-LERMAN, JJ., not participating.

---

[61] *State v. McLeod, supra* note 3.

[62] *Id.*