IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. BATES

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

KEVIN J. BATES, APPELLANT.

Filed April 24, 2018.    No. A-17-105.

Appeal from the District Court for Dawson County: JAMES E. DOYLE IV, Judge. Affirmed.

Kevin J. Bates, pro se.

Douglas J. Peterson, Attorney General, and Austin N. Relph for appellee.

PIRTLE, RIEDMANN, and BISHOP, Judges.

RIEDMANN, Judge.

## I. INTRODUCTION

Kevin J. Bates appeals the order of the district court for Dawson County which denied his motion for postconviction relief without an evidentiary hearing. Finding no merit to the arguments raised on appeal, we affirm.

## II. BACKGROUND

In September 2014, a jury convicted Bates of second degree assault, third degree domestic assault, and criminal mischief. The district court found that the domestic assault was a second offense and that Bates was a habitual criminal. Bates was sentenced to consecutive sentences of 18 to 20 years' imprisonment, 20 to 60 months' imprisonment, and 90 days' imprisonment.

He appealed his conviction and sentence for second degree assault aggravated upon the habitual criminal count. See *State v. Bates*, No. A-14-1081, 2015 WL 7261034 (Neb. App. Nov.

- 1 -

17, 2015) (selected for posting to court website). The background provided in this court's opinion on Bates' direct appeal states as follows:

On February 8, 2014, Melissa Callahan, Bates' then girlfriend, went to visit Bates, who was working at his parents' farm. Bates entered Callahan's vehicle and an argument ensued. Callahan claims they argued because she asked him to close the door because she was cold; Bates says he became upset when he noticed "track marks" on Callahan's arm, which he assumed meant she was using methamphetamine (meth) again. Callahan also claims that Bates assaulted her in the vehicle, which Bates denies.

Bates and Callahan were sitting in a vehicle in Bates' parents' driveway when Callahan's friend, Eswin Lopez-Bravo, arrived. Callahan testified at trial that Bates exited the vehicle and approached Lopez-Bravo's car while she waited. She said the men talked briefly and then Bates began punching Lopez-Bravo. Bates, however, claimed that Callahan got out of the vehicle to talk to Lopez-Bravo while he stayed behind. Bates said Callahan and Lopez-Bravo started arguing over what he thought was money. According to Bates, Lopez-Bravo grabbed Callahan, so Bates got out of the vehicle to intervene. Bates saw what he thought was a bag of meth in Lopez-Bravo's hand. Bates claimed that Lopez-Bravo then hit him on the side of the head, so Bates swung back and punched him three times. Bates also punched out the window of Lopez-Bravo's vehicle.

*Id.* at *1.

On direct appeal, Bates assigned that the district court committed plain error by permitting Lopez-Bravo to invoke his Fifth Amendment privilege against self-incrimination in the presence of the jury and that his trial counsel was ineffective when he failed to move to strike Lopez-Bravo's testimony. We agreed that the court erred in allowing Lopez-Bravo to invoke his right to remain silent in the presence of the jury, but concluded that such error was harmless beyond a reasonable doubt. We also found no merit to the ineffective assistance of counsel claim. We therefore affirmed the conviction and sentence.

On September 1, 2016, Bates filed a pro se motion for postconviction relief. He alleged that his trial counsel was ineffective in 6 respects and that his appellate counsel was ineffective in failing to raise the 6 ineffective assistance of trial counsel claims on direct appeal. The district court determined that Bates had different counsel on direct appeal than he did at trial, and therefore, he was required to raise any claims of ineffective assistance of trial counsel on his direct appeal. Because he failed to do so, his postconviction claims against trial counsel are procedurally barred. The court also concluded that the claims against appellate counsel had no merit. The court therefore denied the motion without an evidentiary hearing. Bates now appeals to this court.

### III. ASSIGNMENTS OF ERROR

Bates assigns that the district court (1) erred in denying his request for an evidentiary hearing, (2) erred in finding that trial counsel's performance was not deficient, (3) erred in finding that appellate counsel's performance was not deficient, and (4) committed plain error when submitting untranslated Spanish text messages into evidence and allowing them into the jury room during deliberations.

## IV. STANDARD OF REVIEW

In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief. *State v. Sellers*, 290 Neb. 18, 858 N.W.2d 577 (2015). An evidentiary hearing on a motion for postconviction relief must be granted when the motion contains factual allegations which, if proved, constitute an infringement of the movant's rights under the Nebraska or federal Constitution. *State v. Sellers, supra*. However, if the motion alleges only conclusions of fact or law, or the records and files in the case affirmatively show that the movant is entitled to no relief, no evidentiary hearing is required. *Id*.

## V. ANALYSIS

### 1. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL.

To establish a right to postconviction relief because of counsel's ineffective assistance, the defendant has the burden, under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), to show that counsel's performance was deficient; that is, counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *State v. Sellers, supra*. Next, the defendant must show that counsel's deficient performance prejudiced the defense in his or her case. *Id*. To show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id*. A court may address the two prongs of this test, deficient performance and prejudice, in either order. *Id*.

Bates alleges that his trial counsel was ineffective in 6 respects. However, his appellate counsel on direct appeal was different than his trial counsel, and he failed to raise his current claims against trial counsel on direct appeal. Claims of ineffective assistance of trial counsel are procedurally barred when (1) the defendant was represented by a different attorney on direct appeal than at trial, (2) the claim was not brought on direct appeal, and (3) the alleged deficiencies in trial counsel's performance were known to the defendant or apparent from the record. *State v. Williams*, 295 Neb. 575, 889 N.W.2d 99 (2017). On postconviction relief, a defendant cannot secure review of issues which were or could have been litigated on direct appeal. *Id*.

All of Bates' claims of ineffective assistance of trial counsel could have been raised on direct appeal because he had different appellate counsel than trial counsel and there is no argument or evidence that he was not aware of trial counsel's alleged deficiencies at the time of direct appeal. The claims of ineffective assistance of trial counsel are therefore procedurally barred. Accordingly, the district court did not err in denying an evidentiary hearing on those claims.

### 2. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

A claim of ineffective assistance of appellate counsel which could not have been raised on direct appeal may be raised on postconviction review. *State v. Sellers*, 290 Neb. 18, 858 N.W.2d 577 (2015). When analyzing a claim of ineffective assistance of appellate counsel, courts usually begin by determining whether appellate counsel failed to bring a claim on appeal that actually

prejudiced the defendant. *Id*. That is, courts begin by assessing the strength of the claim appellate counsel failed to raise. *Id*. Counsel's failure to raise an issue on appeal could be ineffective assistance only if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal. *Id*. When a case presents layered ineffectiveness claims, we determine the prejudice prong of appellate counsel's performance by focusing on whether trial counsel was ineffective under the *Strickland* test. *State v. Sellers, supra*. If trial counsel was not ineffective, then the defendant suffered no prejudice when appellate counsel failed to bring an ineffective assistance of trial counsel claim. *Id*.

Bates asserts that appellate counsel was ineffective in failing to raise, on direct appeal, the 6 claims of ineffective assistance of trial counsel he raises here.

(a) Translation of Text Messages

Bates first asserts that appellate counsel was ineffective in failing to raise on direct appeal that trial counsel was ineffective in failing to seek a continuance to obtain the translation of text messages from Spanish to English. The text messages depicted in exhibit 30, which was received into evidence at trial, were apparently exchanged between Callahan and Lopez-Bravo on February 8, 2014, prior to the incident involving Bates. The content of the text messages is a mixture of words in Spanish and English and appears to include short-hand or abbreviations as well.

Bates claims that the content of the text messages was necessary to cross-examine Callahan and Lopez-Bravo and was critical to his defense theory that he was reasonably exercising his right to defend his family, his girlfriend, and himself from a "meth using and addicted stranger uninvited on his parents' property and present to sell drugs to his girlfriend." Bates suggests that the content of the text messages supports his theory that Lopez-Bravo and Callahan were arguing about money and Lopez-Bravo was at the farm to sell drugs to Callahan.

Contrary to Bates' argument that translation was necessary to establish that Callahan and Lopez-Bravo were arguing about money, exhibit 30 contains an entry sent in English from Callahan's phone that reads "Why would I gve u the $ when kevin is gnna pay you in the a.m. [Spanish] bring it to u now." Lopez-Bravo responded, "you no u need, gimy this many [Spanish] don't fuck, call me any more y do t have nothing for you any more, y don't want see u anymore." From this, the jury could have reasonably gleaned, without translation, that the parties were arguing and money was at issue. Additionally, Bates testified that he heard Callahan and Lopez-Bravo arguing about money at the farm before he intervened. Because sufficient evidence was offered to prove that Callahan and Lopez-Bravo were arguing about money, trial counsel was not ineffective for failing to ask for a translation to establish this fact.

Bates also claims translation was necessary to establish that Lopez-Bravo was at the farm to sell drugs to Callahan. But both Bates and Callahan testified at trial that Lopez-Bravo brought drugs with him when he came to the farm. Whether he was there to sell those drugs to Callahan does not establish that Bates acted in defense of her when assaulting Lopez-Bravo.

In support of his defense of others theory, Bates testified that when Lopez-Bravo arrived at his parents' farm on February 8, 2014, Callahan first approached Lopez-Bravo's vehicle and they began a verbal argument during which he heard the word "money." Bates claimed that the argument got louder and then he observed Lopez-Bravo grab Callahan "in the top area," which

Bates believed to be her arms. He said that he then approached the altercation, grabbed Lopez-Bravo, and turned him around. It was then he observed methamphetamine (meth) in Lopez-Bravo's hand and Lopez-Bravo took a swing at him, catching Bates on the side of the head.

Callahan and Lopez-Bravo, on the other hand, both testified that it was Bates who first approached Lopez-Bravo's vehicle, opened the car door, and began hitting Lopez-Bravo. In convicting Bates of second degree assault, the jury necessarily determined that Bates was not acting in defense of Callahan when he assaulted Lopez-Bravo. Even if the translated messages would have supported Bates' theory that Lopez-Bravo and Callahan were arguing about money, and Lopez-Bravo was at the farm to sell drugs to Callahan, Bates has failed to prove that he was prejudiced by counsel's failure to request a continuance so the messages could be translated. Additional evidence supporting Bates' two assertions would have been cumulative and would not have resulted in a different outcome. We therefore conclude that appellate counsel was not ineffective in failing to raise this claim on direct appeal.

Bates also claims the failure to translate the exhibits violates article I, § 27, of the Nebraska constitution. This section states that "[t]he English language is hereby declared to be the official language of this state, and all official proceedings, records and publications shall be in such language, and the common school branches shall be taught in said language in public, private, denominational and parochial schools." Nothing in this section prohibits the receipt of non-English exhibits into evidence, as they are neither official "proceedings, records, nor publications." We therefore reject this argument.

(b) Lopez-Bravo's Fifth Amendment Invocation

Bates next claims that appellate counsel was ineffective in failing to raise on direct appeal that trial counsel was ineffective in the manner in which he handled Lopez-Bravo's invocation of his Fifth Amendment rights. Specifically, Bates asserts that trial counsel should have asked the court to direct Lopez-Bravo to answer the question or requested sanctions upon the witness for refusing to answer the question. He also contends that trial counsel abandoned his cross-examination after Lopez-Bravo's Fifth Amendment invocation.

As the district court correctly observed, a defendant's right to present a defense is not absolute and does not include the right to compel a witness to waive his or her Fifth Amendment privilege against self-incrimination. See *State v. Phillips*, 286 Neb. 974, 840 N.W.2d 500 (2013). The state and federal Constitutions provide that no person shall be compelled to give evidence against himself or herself of an incriminating nature. *State v. Phillips, supra*. While a witness may invoke the Fifth Amendment to avoid answering questions, the witness' assertion of the privilege does not by itself establish the risk of incrimination; instead, the court must make inquiry to determine itself whether answering the questions would raise Fifth Amendment concerns. *State v. Phillips, supra*. Because of the constitutional dimension of the privilege, when a court inquires into the propriety of an invocation of the Fifth Amendment privilege, the guarantee against compulsory self-incrimination must be accorded a liberal construction. See *State v. Phillips, supra*.

Here, the district court made the proper inquiry, and there is no argument that Lopez-Bravo's invocation of his right to remain silent was improper. At the outset of Lopez-Bravo's testimony, Bates' trial counsel asked that the court advise Lopez-Bravo of his Fifth

- 5 -

Amendment right against self-incrimination. The court declined to do so at the time, indicating that it would wait to do so until the issue was raised by a question.

Lopez-Bravo answered all of the questions posed to him on direct examination by the State. During cross-examination, Bates began questioning Lopez-Bravo about meth. Lopez-Bravo admitted that he was under the influence of meth on February 8, 2014 and had smoked meth 3 days before trial. Bates' counsel then asked Lopez-Bravo with whom he had smoked meth 3 days prior, and the court interjected and advised Lopez-Bravo of his Fifth Amendment right to remain silent and avoid self-incrimination. The court then sustained the State's relevance objection to the question.

Bates continued cross-examining Lopez-Bravo on other topics and then asked if he deals or sells meth. The court again advised Lopez-Bravo that if he answers the question, he may be providing information to the State that could be used to prosecute him and that he has a right to remain silent. As a result, Lopez-Bravo invoked his right to remain silent. Bates then stated that he had no further questions for the witness. The district court properly recognized that by Lopez-Bravo admitting to selling meth, he could be incriminating himself. This was the only question to which Lopez-Bravo invoked his right to remain silent. Because Lopez-Bravo properly invoked his constitutional right, the district court had no authority to sanction him for doing so.

Nor could the court direct Lopez-Bravo to answer the question. Trial courts in Nebraska do not have inherent authority to confer immunity. *State v. Robinson*, 271 Neb. 698, 715 N.W.2d 531 (2006). Neb. Rev. Stat. § 29-2011.02 (Reissue 2016) authorizes a grant of immunity to a witness solely upon the motion of the prosecuting attorney. See, also, *State v. Robinson, supra*. Thus, any request from Bates' trial counsel that the district court grant immunity to Lopez-Bravo and direct him to answer the question would have been unsuccessful. Trial counsel was therefore not ineffective in failing to make such a request because, as a matter of law, counsel cannot be ineffective for failing to raise a meritless argument. See *State v. Schwaderer*, 296 Neb. 932, 898 N.W.2d 318 (2017).

Finally, Bates argues that trial counsel abandoned his cross-examination of Lopez-Bravo upon his Fifth Amendment invocation. He claims that trial counsel had a "total breakdown," was not prepared when cross-examination was interrupted by Lopez-Bravo invoking his Fifth Amendment rights, "froze" in the middle of trial, and had no further questions for the witness. Brief for appellant at 13. It is true that after Lopez-Bravo invoked his constitutional rights, trial counsel indicated that he had no further questions for the witness; however, the rest of Bates' allegations are unsupported by the record. Trial counsel was clearly aware of the potential that Lopez-Bravo may invoke his Fifth Amendment rights because trial counsel requested that the court inform Lopez-Bravo of his right to do so at the beginning of his testimony. Additionally, the parties discussed at a pretrial hearing whether questions regarding meth use or sale would be allowed during trial. Thus, there is no evidence to support a finding that trial counsel's performance was deficient because he was so stunned by Lopez-Bravo's invocation of his Fifth Amendment rights that he was unable to continue cross-examination. As a result, appellate counsel was not ineffective in failing to raise this claim on direct appeal.

(c) Cross-Examination of Callahan and Lopez-Bravo

Bates next asserts that appellate counsel was ineffective in failing to raise on direct appeal that trial counsel was ineffective in failing to confront and cross-examine Callahan and Lopez-Bravo concerning their motives to fabricate, any understandings or agreements as to any present or future prosecution, or any threats made by law enforcement in exchange for their testimonies at trial. Bates claims that he was prejudiced by trial counsel's deficiencies because evidence of Callahan's and Lopez-Bravo's motives to testify against him would have wholly impeached their testimonies and resulted in acquittal by the jury.

We first observe that Callahan and Lopez-Bravo appeared at trial under subpoena, and there was such concern that Callahan may not appear on the second day of trial to give her testimony, that she was sequestered in the custody of the sheriff with a female deputy staying with her overnight at a hotel. And photographs received into evidence depict injuries to both witnesses, with Bates admitting to assaulting Lopez-Bravo. Thus, any assertion that Callahan and Lopez-Bravo testified against Bates solely out of a desire to lie in order to get revenge on him in some form is not supported by the record.

Additionally, assuming trial counsel knew or should have known of the extraneous information Bates cites in his motion for postconviction relief, we conclude that Bates was not prejudiced by trial counsel's failure to inquire into these matters during cross-examination. This argument centers on the credibility of Callahan and Lopez-Bravo. Our review of the record indicates that both witnesses were thoroughly cross-examined, questioned about drug use and criminal history, and confronted with inconsistencies in their testimonies. In acquitting Bates of charges of strangulation, false imprisonment, and terroristic threats with respect to Callahan, the jury obviously did not find Callahan's testimony on those issues to be credible, suggesting that trial counsel's cross-examination was at least somewhat effective. Thus, Bates has failed to show how any further impeachment of the witnesses would have changed the outcome of his trial. As a result, this claim is without merit.

(d) False Testimony of Callahan and Lopez-Bravo

In his fourth claim, Bates contends that appellate counsel was ineffective in failing to raise on direct appeal that trial counsel was ineffective for failing to object, move to strike, move for curative instruction, move to dismiss the charges, and preserve for appeal the prosecutor's use of the knowingly false testimony of Callahan and Lopez-Bravo. In support of this claim, Bates points to inconsistencies in the testimonies of the two witnesses. These inconsistencies do not support Bates' conclusory allegation that the prosecutor knew Callahan and Lopez-Bravo were offering false testimony or that trial counsel was aware that the prosecutor had such knowledge. As noted above, the entire testimonies of Callahan and Lopez-Bravo were not fabrications; Bates' own testimony at trial supported much of what the other two witnesses detailed, including his admission to punching Lopez-Bravo and breaking the window of his car. Thus, any suggestion that the witnesses testimonies should have been stricken from the record is unsupported by the evidence. As the district court found, this claim is based on pure speculation and conclusory allegations, which are insufficient to support a claim for postconviction relief. Accordingly, this claim has no merit.

## (e) Callahan's Drug Use

Bates alleges that appellate counsel was ineffective in failing to raise on direct appeal that trial counsel was ineffective for failing to discuss with him and present a defense at trial that Callahan suffered drug induced hallucinations and perceptual distortions and failing to consult or call an expert witness to describe the effects of drug interactions. He claims that trial counsel should have investigated Callahan's mental health and drug use, discussed the matter with Bates, and "presented the defense that the entire testimony of witness Callahan was a complete hallucination and inherently unreliable."

Similar to the previous claim, this claim is based on pure speculation. Bates alleges that "upon information and belief," Callahan has exhibited signs and/or been diagnosed with mental illness, admitted to using various drugs and prescription medications in combination, and was under the influence of said drugs and medications at the time of the crimes.

We first note that the district court granted the State's pretrial motion in limine prohibiting Bates from inquiring into Callahan's prior use of drugs at trial. Thus, trial counsel's cross-examination as to such matters at trial would have been inappropriate. Additionally, as we concluded above, Callahan's entire testimony was not a "complete hallucination." Photographs depict the injuries she sustained, and Bates' testimony mirrors much of Callahan's including the fact that she went to his parents' farm in order to have lunch with him, they argued in her car, she sent Lopez-Bravo a text message from Bates' cell phone asking for a ride, and after Lopez-Bravo arrived at the scene, he and Bates got into a physical altercation. Bates denied assaulting Callahan and claimed that he assaulted Lopez-Bravo in defense of Callahan, but certainly the entirety of Callahan's testimony was not false. Based on the foregoing, we conclude that appellate counsel was not ineffective in failing to raise this claim on direct appeal.

## (f) Jury Instructions

In his final claim, Bates asserts that appellate counsel was ineffective in failing to raise on direct appeal that trial counsel was ineffective for failing to object to the form of the jury instructions and request an instruction which specifically instructed the jury that intent is a material element of second degree assault and third degree assault, listed under sections C and D within jury instruction No. 3.

Here, the jury was given a step instruction with respect to the assault charges. It was first instructed to consider the elements of second degree assault. If the jury found that the State proved each element of second degree assault beyond a reasonable doubt, it was instructed that it must find Bates guilty of second degree assault. Only if the jury determined that the State did not prove all of the elements of second degree assault was it then permitted to consider whether the State proved all of the elements of third degree assault.

The jury instructions provided that the elements of second degree assault were that Bates caused bodily injury to Lopez-Bravo, that he did so with a dangerous instrument, that he did so knowingly or intentionally, and that Bates did so on or about February 8, 2014, in Dawson County, Nebraska. The jury was also required to determine that Bates did not act in defense of Callahan as set out in a separate jury instruction. A separate instruction provided:

"Intentionally" means willfully or purposely and not accidentally or involuntarily. The intent involved in conduct is a mental process and may be inferred from the conduct itself, the actor's language in reference to the conduct, and the circumstances surrounding the incident. When an element of a crime involves existence of a defendant's mental process or other state of mind of an accused, such elements involve a question of fact and may be proved by circumstantial evidence.

In his postconviction motion, Bates argues that trial counsel was ineffective in failing to request that the jury be instructed that intent is a material element of second and third degree assault, and in deciding whether the defendant acted with intent, the jury should consider his words and acts and all surrounding circumstances. We first observe that the elements of second degree assault set out in the jury instructions follow Neb. Rev. Stat. § 28-309 (Reissue 2016). A jury instruction is sufficient if it uses the language of the statute. *State v. Hinrichsen*, 292 Neb. 611, 877 N.W.2d 211 (2016). Thus, no separate intent instruction was required when the requisite intent required to convict Bates of second degree assault was included in the elements of the crime. We need not address any instruction with respect to third degree assault because the jury did not reach that issue.

In addition, the jury instruction given was essentially the same as what Bates is now requesting. The jury was informed that it could consider Bates' words and actions as well as other circumstances in determining his intent. We also observe that whether Bates had the requisite intent in this case was essentially undisputed. In other words, he was not arguing that he accidentally or involuntarily punched Lopez-Bravo. Rather, Bates' defense was that his actions were justified because he assaulted Lopez-Bravo in order to defend Callahan. Thus, the main question for the jury was the final element of second degree assault: whether Bates acted in defense of another.

Under this claim, Bates also argues that trial counsel's performance was deficient because he failed to object to an error in jury instruction No. 3. Jury instruction No. 3 encompassed the elements of all six crimes with which Bates had been charged. After listing the elements of two of the offenses, false imprisonment and strangulation which were listed under sections A and B, the instruction provided, "If you have considered all six crimes and reached and recorded a verdict as to each crime, stop your deliberations and notify the bailiff or Clerk." Bates' motion claims that the jury's confusion was reflected by its returning to the court with an incomplete verdict form.

The record reflects that the jury initially returned the forms to the court and had completed both the forms for second degree assault and third degree assault. Thus, the court asked the jury to return to the jury room to ensure the forms accurately reflected the verdicts. Obviously the jury's confusion did not stem from the error included after the instructions for false imprisonment and strangulation because at that point, the jury had not yet considered the assault charges. In any event, we cannot find that Bates was prejudiced by the typographical error in jury instruction No. 3 because the jury ultimately considered all six crimes, convicting him of three offenses and acquitting him of the remaining three offenses. Thus, it cannot be said that the jury did not consider all parts of jury instruction No. 3. As a result, appellate counsel was not ineffective for failing to raise this claim on direct appeal.

### 3. PLAIN ERROR

Finally, Bates assigns that the district court committed plain error when it submitted the untranslated text messages into evidence at trial and allowed them into the jury room during deliberations. Plain error cannot be asserted in a postconviction proceeding to raise claims of error by the trial court. *State v. Haynes*, 299 Neb. 249, 908 N.W.2d 40 (2018). Bates cannot avoid the strictures of an ineffective assistance of counsel claim by reframing the allegation as plain error. See *id*. Consideration of plain error occurs only at the discretion of an appellate court. *Id*. Moreover, Bates did not allege this error in his postconviction motion; rather he raises it for the first time on appeal. Appellate courts do not generally consider arguments and theories raised for the first time on appeal. *State v. Ortega*, 290 Neb. 172, 859 N.W.2d 305 (2015). We therefore decline to address this assigned error.

### VI. CONCLUSION

We find that the ineffective assistance of counsel claims raised against trial counsel are procedurally barred because they were not raised on direct appeal. We additionally conclude that the district court did not err in determining that the claims against appellate counsel lack merit and in denying postconviction relief without an evidentiary hearing. We therefore affirm.

AFFIRMED.