IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. CHURCHICH

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

RAYMOND L. CHURCHICH, JR., APPELLANT.

Filed October 9, 2018.    No. A-17-1036.

Appeal from the District Court for Sarpy County: WILLIAM B. ZASTERA, Judge. Affirmed.

Raymond L. Churchich, Jr., pro se.

Douglas J. Peterson, Attorney General, and Stacy M. Foust for appellee.

MOORE, Chief Judge, and RIEDMANN and BISHOP, Judges.

BISHOP, Judge.

## I. INTRODUCTION

Raymond L. Churchich, Jr., pro se, appeals from the denial of his motion for postconviction relief following an evidentiary hearing. He claims the district court for Sarpy County erred in failing to find that his trial counsel was ineffective and that he was prejudiced by counsel's performance. For the reasons set forth below, we affirm the judgment of the district court.

## II. BACKGROUND

In August 2012, Churchich, age 30 at the time, was involved in a standoff during which he barricaded himself in his parents' basement with a shotgun and fired multiple shots outside a window in the direction of police officers responding to the scene. A detailed factual background can be found in this court's previous opinion on Churchich's direct appeal. See *State v. Churchich*, No. A-13-1005, 2014 WL 5335357 (Neb. App. Oct. 21, 2014) (selected for posting to court website).

In September 2012, the State filed an information charging Churchich with seven felonies. He was charged with two counts of attempted first degree assault on an officer, each a Class II felony; one count of attempted second degree assault on an officer, a Class III felony; three counts of use of a firearm to commit a felony, each a Class IC felony; and one count of criminal mischief, more than $1,500, a Class IV felony.

In December 2012, Churchich filed a motion to determine his competency and sanity. After a hearing in January 2013, the court entered an order for Churchich to be evaluated (1) as to his competency to stand trial and (2) to determine his sanity or insanity at the time of the alleged offense.

In February 2013, a hearing was held wherein Churchich's counsel withdrew and new counsel, James E. Schaefer, entered an appearance on behalf of Churchich. The court granted Schaefer's request for a continuance for additional time to review the information from the competency and sanity evaluation, and to "perhaps even obtain additional physicians or doctors to examine [Churchich]." Schaefer agreed with the court that there was no need for a hearing on the sanity issue at that time, and Schaefer said that if it became an issue he would let the court know. The competency hearing was reset for March.

At the March 2013 competency hearing, Desirae M. Solomon (Schaefer's colleague) appeared with Churchich. The court asked Solomon if she wished to have further evaluations done at Churchich's expense. Solomon responded, "At this time we are willing to submit based on the evaluations that have been submitted to the Court." The court noted that it had received two evaluations, one dealing with the competency issue and the other dealing with the sanity issues. Solomon clarified that at the last court hearing, the motion for sanity was "tabled because that's going to be a trial issue if this matter proceeds to trial." "So the only thing that we're asking the Court to consider at this time would be the motion for competency based on the evaluation that this Court received on the competency issue only." The court found that Churchich was competent to stand trial "based on the report of Dr. [Y. Scott] Moore that states that it is his opinion that Mr. Churchich has the capacity to understand the nature and the object of the proceedings against him, that he is competent to assist in his defense and stand trial[.]"

At a hearing in July 2013, the court was informed that there was a plea agreement. The State was granted leave to file, and did file, an amended information charging Churchich with four felonies. He was charged with Count 1, attempted first degree assault on an officer, a Class II felony; Count 2, attempted second degree assault on an officer, a Class III felony; Count 3, use of a firearm to commit a felony, a Class IC felony; and Count 4, criminal mischief, more than $1,500, a Class IV felony. Pursuant to a plea agreement, Churchich pled no contest to Counts 1, 2, and 3 of the amended information, and Count 4 was dismissed because Churchich "agreed to make the restitution necessary on Count [4]." The court accepted Churchich's pleas and adjudged him guilty of Counts 1, 2, and 3. Sentencing was set for September 30.

In September 2013, Solomon filed a motion to continue Churchich's sentencing hearing scheduled for September 30 because Churchich had participated in an evaluation with Kirk A.B. Newring, Ph.D., but Dr. Newring's report would not be available by September 30; Solomon alleged that the report was "necessary for the Court's consideration before sentencing" Churchich. The motion to continue was granted and sentencing was set for October.

At a sentencing hearing in October 2013, the court stated that it had received the presentence report, which "includes the additional submissions that were sent in by [Churchich], which include[s] the evaluation from Dr. Newring[.]" The court noted that the events of August 2012 were "in part, due to [Churchich's] mental illness and [his] mental condition," but that did not excuse the actions or make it any less dangerous to those being shot at and those trying to get him under control. The court, in addressing Churchich, said:

> So while there are things in the [presentence investigation] and in all the materials that certainly cause the Court to lower a sentence from a maximum sentence, which the Court would have had no problem imposing had the evidence shown that you were cold and calculated in doing the -- in the -- doing the things you did, it doesn't justify, I don't believe, either the type of blended sentence, for example that Mr. Schaefer has recommended here today. It does require a serious sentence but not a sentence that would necessarily keep you in prison forever.

Churchich was sentenced to 15 to 30 years' imprisonment for attempted first degree assault on an officer (Count 1), 7 to 15 years' imprisonment for attempted second degree assault on an officer (Count 2), and 5 to 15 years' imprisonment for the use of a firearm to commit a felony (Count 3); all sentences were to be served consecutively. This was a total sentence of 27 to 60 years' imprisonment. The court also ordered Churchich to pay $4,440.56 in restitution to the Bellevue Police Department (for a robot that was damaged).

Churchich had different counsel on direct appeal than he had at the trial level. On direct appeal, Churchich challenged his convictions and sentences, and he argued that he received ineffective assistance of trial counsel. Churchich argues, as relevant to this current postconviction appeal, that his trial counsel failed to file a motion to withdraw his pleas of no contest after receiving Dr. Newring's report. Churchich's convictions and sentences were affirmed on direct appeal, but this court determined that the record was insufficient to address this claim for ineffective assistance of counsel. See *State v. Churchich, supra*.

On October 9, 2015, Churchich, via the same counsel he had on direct appeal, filed a motion for postconviction relief alleging his trial counsel was ineffective (1) in the "[p]re [p]lea advice" given to him regarding sentencing, the pressure to accept the plea, and "failure to properly inform" Churchich before and during plea and sentencing phases; (2) by failing to inform Churchich of the possibility of withdrawing his plea; and (3) by failing to move to withdraw Churchich's plea. In its opinion and order filed on September 15, 2017, the district court stated, "By way of Opinion and Order, dated January 21, 2016, this Court denied [Churchich's] postconviction motion without an evidentiary hearing as it related to his first claim," but the court granted Churchich an evidentiary hearing on his second and third claims. Accordingly, Churchich's first claim is not at issue in this current appeal. See *State v. Determan*, 292 Neb. 557, 873 N.W.2d 390 (2016) (within postconviction proceeding, order granting evidentiary hearing on some issues and denying hearing on others is final, appealable order as to claims denied without hearing).

At the evidentiary hearing held on July 21, 2017, the court received into evidence the bill of exceptions from the criminal proceedings, Dr. Newring's report, and the depositions of Schaefer, Solomon, and Churchich.

In its order filed on September 15, 2017, the district court denied Churchich's motion for postconviction relief. The court found that Churchich failed to show that his trial counsel's performance was deficient and/or fell below an objective standard of reasonableness for an attorney. The court also found that Churchich failed to establish that he was actually prejudiced by his counsel's performance. The court denied and dismissed Churchich's motion for postconviction relief.

Churchich, now pro se, appeals.

## III. ASSIGNMENTS OF ERROR

Churchich assigns, consolidated and restated, that the district court erred in denying his motion for postconviction relief.

## IV. STANDARD OF REVIEW

In an evidentiary hearing on a motion for postconviction relief, the trial judge, as the trier of fact, resolves conflicts in the evidence and questions of fact. An appellate court upholds the trial court's factual findings unless they are clearly erroneous. *State v. McGuire*, 299 Neb. 762, 910 N.W.2d 144 (2018).

A claim that defense counsel provided ineffective assistance presents a mixed question of law and fact. *Id.* When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error. *Id.* With regard to questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), an appellate court reviews such legal determinations independently of the lower court's conclusion. *State v. McGuire, supra.*

## V. ANALYSIS

Churchich claims the district court erred in denying his motion for postconviction relief. As noted above, we address only the two claims denied in the district court's September 15, 2017, order, namely, whether trial counsel was ineffective by failing to inform Churchich of the possibility of withdrawing his plea and by failing to move to withdraw Churchich's plea.

### 1. POSTCONVICTION RELIEF PRINCIPLES

The Nebraska Postconviction Act does not provide a procedure whereby the defendant can avoid the waiver inherent to a voluntary entry of a guilty plea or a plea of no contest; such a plea waives every defense to a charge, whether the defense is procedural, statutory, or constitutional. See *State v. Haynes*, 299 Neb. 249, 908 N.W.2d 40 (2018). The only exceptions are for the defenses of insufficiency of the indictment, information, or complaint; ineffective assistance of counsel; and lack of jurisdiction. *Id.*

To establish a right to postconviction relief because of counsel's ineffective assistance, the defendant has the burden, in accordance with *Strickland v. Washington*, to show that counsel's performance was deficient; that is, counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. Next, the defendant must show that counsel's deficient performance prejudiced the defense in his or her case. To show prejudice, the defendant must demonstrate a reasonable probability that but for

counsel's deficient performance, the result of the proceeding would have been different. A court may address the two prongs of this test, deficient performance and prejudice, in either order.

*State v. Collins*, 299 Neb. 160, 164, 907 N.W.2d 721, 726 (2018).

In a plea context, deficiency depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases. *State v. Haynes, supra*. The prejudice requirement in a plea context is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading guilty. *Id*. The likelihood of the defense's success had the defendant gone to trial should be considered along with other factors, such as the likely penalties the defendant would have faced if convicted at trial, the relative benefit of the plea bargain, and the strength of the State's case. *Id*.

When reviewing a claim of ineffective assistance of counsel, trial counsel is afforded due deference to formulate trial strategy and tactics, and an appellate court will not second-guess reasonable strategic decisions by counsel. *State v. Nolt*, 298 Neb. 910, 906 N.W.2d 309 (2018). When considering whether trial counsel's performance was deficient, there is a strong presumption that counsel acted reasonably. *Id*.

## 2. EVIDENCE PRESENTED AT EVIDENTIARY HEARING

### (a) Dr. Moore's Report

Dr. Moore's report was included with Schaefer's deposition. In a letter to the court dated January 28, 2013, Dr. Moore, a psychiatrist, opined that Churchich "would not fulfill the criteria for an insanity plea." Dr. Moore said he had reviewed the police reports from the August 2012 incident, had read through a treatment report from October 2012 diagnosing Churchich with alcohol dependence and "Mood Disorder, Not Otherwise Specified," and met with and evaluated Churchich on January 18, 2013. According to Dr. Moore, during the August 2012 incident, Churchich was "quite angry" and Dr. Moore believed Churchich "was intoxicated at the time." As stated by Dr. Moore:

> *The issue is whether he understood what he was doing, and understood that it was wrong. It is my opinion that he understood both of these.* I think he was intoxicated with alcohol at the time and may very well have been using other illegal substances also. *Albeit that he carries the diagnosis of either Major Depressive Disorder with Depressive Features, or Bipolar Disorder with Severe Depressive Episodes*[,] *I do not believe that either of these illnesses were the determinate factor at the time of the incident in question.* I believe Mr. Churchich was intoxicated. However, *I think he did know what he was doing because he did it deliberately.* He wrote with a marker on his body as well as on the walls. He called his father to say, "It's either them or me." *He told me he was angry and that he was firing the gun in anger.* He did say that he did not ever aim it at any of the policeman [sic] who were outside, but obviously this is an issue that the police themselves think is inaccurate. In any case, *I find no evidence that he did not understand what he was doing, and I find no evidence that he did not know right from wrong with what he was doing.* I believe his decision to engage in this behavior was influenced by being intoxicated, but I don't think

he was intoxicated to the point that he would fulfill the criteria for an insanity plea in any case.

Also, my understanding is that since August of 2011, intoxication of either alcohol or other substances cannot be used as the etiology of difficulties at the time of the commission of the crime. Therefore, *even if I thought that he did not understand what he was doing, or that he did not understand that it was wrong, I would believe it was due to the alcohol and drug intoxication, and not to his previously known mental illness.*

(Emphasis supplied.)

### (b) Dr. Newring's Report

In a 5-page letter to Solomon dated October 8, 2013, Dr. Newring stated that he had reviewed police reports and depositions related to the August 2012 incident, had met with Churchich on September 19, 2013, and had also reviewed "Psychiatric and Behavioral Health Records" from Lasting Hope and Lutheran Family Services. According to Dr. Newring,

While Mr. Churchich has had some psychiatric care, and has been diagnosed as Bipolar or Depressed, based on his report, a diagnosis of Posttraumatic Stress Disorder appears to be the most parsimonious explanation for his behavior. The behavioral health sequence appears to be: sexual abuse from age 7-10, as a boy, Mr. Churchich felt some of the common emotions that follow having been repeatedly raped; shame, guilt, and self-loathing. As a teen and young adult, he used alcohol and later drugs, to assuage the pain from the original abuse, with additional shame, guilt, embarrassment, and humiliation, as his attempts to cope made things worse. Psychiatric interventions led to Mr. Churchich taking more substances (albeit prescription) to alleviate his psychological suffering, though without addressing the original insult of the sexual abuse, the psychological turmoil persisted. Mr. Churchich then had problematic experiences with law enforcement (March) and his girlfriend (August) in that same year (2012). Mr. Churchich reported feeling further traumatized by these interactions, powerless, helpless, and hopeless to make things better, resulting in his seeing suicide as his only option. He was unable to effectively commit suicide, leaving him with the only (apparent) option of what has been called Suicide By Cop (SBC). He attempted SBC in August of 2012, and has reported that he made a later suicide attempt while housed in the Sarpy County Law Enforcement Center. Mr. Churchich was suicidal in August of 2012, and law enforcement personnel were so concerned about Mr. Churchich's mental health that they placed him into Emergency Protective Custody.

*Within a reasonable degree of psychological certainty,* [*Churchich*] *was suffering from a mental abnormality or defect, which limited his ability to knowingly, intelligently, and willfully form the volitional intent to commit the actions that led to his arrest* [*in August 2012*].

(Emphasis supplied.)

In his deposition, Schaefer testified that he graduated from law school in 1973. "Probably 50 percent" of his practice is representing persons charged with felonies. Schaefer was first contacted by one of Churchich's parents in February 2013 because they were dissatisfied with Churchich's previous counsel and wanted to make a change. Schaefer was ultimately retained and he "let them know" that Solomon was also going to be working on the case. When asked how much information he had about Churchich's mental health at the time he was retained, Schaefer responded, "I don't recall specifically at the time I was retained. We accumulated all the documents probably within a reasonable time after the meeting in February." At the first hearing at which Schaefer appeared, he was in possession of Dr. Moore's report (who opined that Churchich would not fulfill the criteria for an insanity defense), but wanted a second opinion; he had Dr. Newring in mind. Schaefer met with Churchich "one-on-one three or four times." Schaefer also met with Churchich's parents, and Churchich's mother was a "very frequent caller." Churchich "wanted to plea negotiate the case." Plea negotiations were ongoing, and "after we deposed the policemen" a decision was made to accept the plea offer, and it was accepted in July. Churchich was evaluated by Dr. Newring after Churchich entered his plea because "we thought that we wanted to present a better -- or, you know, as positive a picture as we could of [Churchich]." "You know, [Churchich] was -- he's an alcoholic. He's a drug addict. He's had a lot of problems in his life. And we thought giving him a psychological evaluation would be something that [the judge] would appreciate." Schaefer received the evaluation in October 2013 and "[did not] recall" if he sent a copy of the evaluation to Churchich, and "[did not] remember" if he had a meeting with Churchich to review the evaluation. When asked if he gave a copy of the evaluation to Churchich's parents, Schaefer responded, "I probably did. That would be in the normal course of what we would do." When asked if he ever had a meeting with Churchich's parents to go through the evaluation, Schaefer responded, "I don't remember. If we had any conversation about it, it would have been probably over the phone[.]" When asked if, during the course of his representation of Churchich, did the possibility of withdrawing his plea ever come up, Schaefer said, "No."

Schaefer was questioned by the State as follows.

Q. . . . I think you discussed the issue of whether or not you would move to withdraw the defendant's plea based on Dr. Newring's report. Why did you not?

A. Well, specifically, I don't have any memory of that right now. But it just wasn't an issue. His competency was not an issue, in my opinion.

Q. And why is that?

A. Well, even Dr. Newring's report said [Churchich] had the ability to form an intent, as I recall his -- he had limited ability to knowingly and intelligently form the intent to commit the actions that led to his conviction. And so we didn't feel like we had a leg to stand on.

Q. Okay. Because, in your opinion, saying that there's a limited ability was not necessarily saying there was no ability?

A. Right.

Q. Okay. And, obviously, you had Dr. Moore's opinion that indicated that he would not qualify for a sanity [sic] defense?

A. Correct.

Q. And that he was competent to stand trial as well?

A. Yes.

During redirect examination by Churchich's counsel, Schaefer said that after reading Dr. Newring's report, "it was our opinion that [Churchich] had some limited ability to know what he was doing, but not that he didn't know what he was doing."

### (d) Solomon's Deposition Testimony

In her deposition, Solomon testified that she graduated from law school in 2003. She started her own practice in January 2016, but previously was an associate at Schaefer Shapiro. During her time at Schaefer Shapiro, Solomon worked with Schaefer on the Churchich case. When she began working on the case, Solomon reviewed Dr. Moore's competency and sanity evaluations. Solomon was asked if there was ever any conversation about having Churchich evaluated by someone other than Dr. Moore. Solomon responded,

[Schaefer] and I had a conversation after [Churchich] had pled, and we wanted to get sympathy from [the judge]. We wanted to paint a clearer picture of who [Churchich] is as a person and who he was at that particular time.

The reports that we had access to, not only [Dr. Moore's], but other reports that we read did not paint a very glowing picture of [Churchich]. So we discussed having Dr. Newring do another evaluation of [Churchich] so that we would have something to show [the judge] that he should have some mercy on [Churchich] for sentencing purposes.

Solomon was asked if she went over Dr. Newring's evaluation with Churchich. She said, "I would have been there when [Schaefer] went over it with [Churchich]. I don't recall if I spoke with [Churchich] on the phone about it, but we would have been together when he discussed it, 'This is what the evaluation said.'" Solomon "[did not] recall" if the evaluation was provided to Churchich's family. When asked if it was ever brought up to file a motion to withdraw Churchich's plea, Solomon responded, "No."

Solomon was questioned by the State as follows.

Q. With regard to the decision about withdrawing or not withdrawing [Churchich's] plea, why was it that there was no motion filed or anything with regard to withdrawing his plea?

A. When we represented [Churchich], we negotiated the best plea deal that we would possibly get under the situation. [Churchich] was charged with multiple felonies, three uses alone, which had mandatory minimums on them. We were able to get [the prosecutor] to dismiss two of those uses and able to get her to kick some of the other felonies involved.

There was a point in time where [Churchich] had rejected a plea offer, and the matter was set for a jury trial. We weren't going to file -- there's no reason to file a motion to withdraw a plea, and if we had, that deal was forever gone. [Churchich] would have been in a lot worse situation had we lost that motion to withdraw the plea. It would have violated the plea agreement.

- 8 -

When the State asked if receiving Dr. Newring's report had anything to do with her decision to not withdraw Churchich's plea, Solomon responded,

> There was no reason to withdraw his plea. I read Dr. Newring's report. It was to gain sympathy with the Judge, that [Churchich] was somebody who had a lot of problems and -- but based on that report, there was no legal reason, in my opinion and [Schaefer's] opinion, to withdraw a plea.

### (e) Churchich's Deposition Testimony

In his deposition, Churchich, now 34 years old, testified that he has a history of mental health problems; "Bipolar and depression ever since I was about 20, 21 years old." During the course of this case, he tried to "kill [himself]" by "jump[ing] off the top tier of one of the mods" at Sarpy County Jail; it was after this that Churchich was at the Lincoln Correctional Center and his parents hired Schaefer to represent him. Churchich completed an evaluation with Dr. Newring in September 2013, prior to his sentencing. After he met with Dr. Newring, he never reviewed any letters or reports that Dr. Newring wrote prior to sentencing. Churchich, "assumed" Dr. Newring wrote an evaluation, but he "wasn't informed of it." Neither Schaefer nor Solomon (1) told him what the evaluation said, (2) discussed with him whether the evaluation could be used to file a motion to withdraw his plea, or (3) discussed with him the option of withdrawing his plea prior to sentencing. Churchich was asked what he would have done if Schaefer and Solomon had told him that he could use Dr. Newring's evaluation to possibly ask the judge to allow him to withdraw his guilty plea to the charges. Churchich responded, "I would have took [sic] that option" "[b]ecause knowing now what I know, what's in the report, I feel like -- I feel like it would have just been best for my interest."

Churchich's affidavit was offered, without objection, as an exhibit at his deposition. In his affidavit, Churchich stated that he did not "see or know what was in Dr. Newring's report until after sentencing. My lawyers never talked to me about possibly withdrawing my plea based on Dr. Newring's report." He further stated that had he known what was in Dr. Newring's report, "I would not have pled and I would have insisted on going to trial. If my lawyers would have told me what was in his report, I would have wanted them to withdraw my plea and use Dr. Newring as a witness at my trial."

### 3. WAS COUNSEL'S PERFORMANCE DEFICIENT?

As stated previously, in accordance with *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), Churchich has the burden to show that counsel's performance was deficient. The crux of Churchich's argument is that if he had known about Dr. Newring's report, he would have gone to trial because "had a jury been aware of all the facts surrounding the Evaluation by Dr. Newring, it would have been presented with significant doubts about Churchich's guilt." Brief for appellant at 7. He claims that Dr. Newring's findings create a "possibility that a jury would have reasonable doubt about his guilt." *Id*. Thus, had he known "what was in Dr. Newring's report, he would not have pled and he would have insisted on going to trial." *Id*. at 8-9.

However, Churchich's trial attorneys, Schaefer and Solomon, both stated in their depositions their belief that after reviewing Dr. Newring's report that there was not any legal reason to withdraw Churchich's plea. Schaefer noted that Dr. Newring only opined as to Churchich having a "limited ability" to form the intent to commit the actions that led to his conviction, and having a limited ability was not saying "no ability." Therefore, Schaefer concluded they did not have "a leg to stand on." Solomon agreed that there was no legal reason to withdraw Churchich's plea as a result of Dr. Newring's report. Further, Solomon asserted they had "negotiated the best plea deal that we would possibly get under the situation." Solomon pointed out that they were able to get two charges with mandatory minimum sentences dismissed and succeeded in getting the prosecutor "to kick some of the other felonies involved." Solomon stated that there was "no reason to file a motion to withdraw a plea, and if we had, that deal was forever gone," and Churchich would have been "in a lot worse situation."

Under our current common-law definition, the two requirements for the insanity defense are that (1) the defendant had a mental disease or defect at the time of the crime and (2) the defendant did not know or understand the nature and consequences of his or her actions or that he or she did not know the difference between right and wrong. *State v. Williams*, 295 Neb. 575, 889 N.W.2d 99 (2017). While the insanity defense itself is a product of common law, the procedural aspects of the insanity defense are set out in Neb. Rev. Stat. § 29-2203 (Reissue 2016). See *State v. Hotz*, 281 Neb. 260, 795 N.W.2d 645 (2011). For purposes of § 29-2203, "insanity does not include any temporary condition that was proximately caused by the voluntary ingestion, inhalation, injection, or absorption of intoxicating liquor, any drug or other mentally debilitating substance, or any combination thereof." § 29-2203(4). See, also, *State v. Williams, supra* (defendant may not assert insanity defense when insanity was temporary and brought on solely by voluntary intoxication through use of drugs). And § 29-2203 places the burden for proving insanity on the defendant.

Nothing in either Dr. Moore's or Dr. Newring's report would support an insanity defense. In his report, Dr. Moore said, "The issue is whether he understood what he was doing, and understood that it was wrong. It is my opinion that he understood both of these." Dr. Moore also said that, "Even if I thought that he did not understand what he was doing, or that he did not understand that it was wrong, I would believe it was due to the alcohol and drug intoxication, and not to his previously known mental illness." And Dr. Newring's report did not state that Churchich did not know or understand the nature and consequences of his actions or that he did not know the difference between right and wrong. Dr. Newring opined only that Churchich was "suffering from a mental abnormality or defect, which *limited his ability* to knowingly, intelligently, and willfully form the volitional intent to commit the actions that led to his arrest." (Emphasis supplied.) Because Dr. Newring's opinion was not sufficient to give rise to an insanity defense, neither Schaefer nor Solomon were deficient by not informing Churchich of the possibility of withdrawing his plea, or not moving to withdraw Churchich's plea on that basis.

Separate and apart from an insanity defense, a defendant may, with appropriate evidence, try to defeat the charge filed against him or her by proving that at the time the offense occurred, the defendant lacked the ability to intend the voluntary and probable consequences of his or her act. *State v. Urbano*, 256 Neb. 194, 589 N.W.2d 144 (1999). "'[A]lthough there is but one type of insanity which will support a finding of not guilty or not responsible by reason of insanity, there

are a variety of mental conditions which bear upon the ability to form a specific intent.'" *Id*. at 204, 589 N.W.2d at 152-53 (quoting *State v. Vosler,* 216 Neb. 461, 468, 345 N.W.2d 806, 811 (1984)). We note the district court made a reference to Churchich's convictions being "general intent" crimes. See *State v. Cebuhar*, 252 Neb. 796, 567 N.W.2d 129 (1997) (assault on peace officer is general intent crime). Whereas, the State contends that "these are specific intent crimes." Brief for appellee at 10. The Nebraska Supreme Court has acknowledged that the classification of a violation of a statute as a "specific intent" or "general intent" crime is not helpful in determining what the statute requires. See *State v. Mucia*, 292 Neb. 1, 5, 871 N.W.2d 221, 224 (2015) ("[t]hese terms have been the source of considerable confusion, perhaps because of the inconsistent definitions given to these terms over time"). We conclude that regardless of whether Churchich's crimes were specific intent crimes or general intent crimes, the district court nevertheless properly concluded that trial counsel's performance was not deficient. Again, Dr. Newring's opinion was not that Churchich "lacked the ability" to intend the voluntary and probable consequences of his act, see *State v. Urbano, supra*, rather Dr. Newring's opinion was that Churchich's ability was "limited."

Dr. Newring opined that Churchich "was suffering from a mental abnormality or defect, which limited his ability to knowingly, intelligently, and willfully form the volitional intent to commit the actions that led to his arrest." Dr. Newring did not opine that Churchich was incapable of forming the intent to engage in the actions leading to his convictions. Therefore, as the State points out, "Both Schaefer and Solomon reviewed Dr. Newring's report and neither viewed it as a basis for Churchich to motion to withdraw his pleas but, rather, they viewed it as a sentencing mitigation tool." Brief for appellee at 10. Schaefer explained that Dr. Newring's finding that Churchich had limited ability rather than no ability to form the requisite intent for the crimes did not create a legal basis to file a motion to withdraw Churchich's pleas. Filing such a motion would have risked the plea agreement in which Churchich's seven felonies were reduced to three felonies. We afford due deference to a trial counsel's formulation of trial strategy and tactics, and will not second-guess reasonable strategic decisions by counsel. See *State v. Nolt*, 298 Neb. 910, 906 N.W.2d 309 (2018). The decisions made by Churchich's trial attorneys were within the range of competence demanded of attorneys in criminal cases. We agree with the district court that neither Schaefer nor Solomon were deficient by not informing Churchich of the possibility of withdrawing his plea, or not moving to withdraw his plea on the basis of Dr. Newring's report.

Moreover, even if Churchich's trial attorneys were deficient, Churchich cannot establish prejudice because it is not likely that he would have been successful at trial if his best evidence was that he had a "limited" ability to form the intent to commit the crimes for which he was convicted. This factor should also be considered along with other factors, such as the likely penalties the defendant would have faced if convicted at trial, the relative benefit of the plea bargain, and the strength of the State's case. See *State v. Haynes,* 299 Neb. 249, 908 N.W.2d 40 (2018). Had Churchich insisted on going to trial, he would have been facing seven felony charges--three of which carried mandatory minimum sentences of 5 years' imprisonment and were required to be served consecutive to all other sentences. The seven felonies, at the time, carried a potential aggregate sentence of up to 275 years' imprisonment. (Two counts of attempted first degree assault on an officer, each a Class II felony, were each punishable by 1 to 50 years' imprisonment; one count of attempted second degree assault on an officer, a Class III felony,

punishable by 1 to 20 years' imprisonment, a $25,000 fine, or both; three counts of use of a firearm to commit a felony, each a Class IC felony, were each punishable by a mandatory minimum of 5 years and up to a maximum of 50 years' imprisonment; and one count of criminal mischief, more than $1,500, a Class IV felony, punishable by up to 5 years' imprisonment, a $10,000 fine, or both. See Neb. Rev. Stat. § 28-105 (Cum. Supp. 2012). And sentences for the use of a firearm to commit a felony are required to be consecutive to any other sentence imposed. See Neb. Rev. Stat. § 28-1205 (Cum. Supp. 2012). Instead, Churchich received a significant benefit by agreeing to plead to three felonies, because he was ultimately given a total sentence of 27 to 60 years' imprisonment and ordered to pay $4,440.56 in restitution.

Additionally, had Churchich gone to trial, the State had a strong case against him. As noted in our previous opinion on direct appeal, while Churchich was firing shots, an officer heard him say "something to the effect of 'Fuckers'--'I know where you are hiding' or 'come out of hiding.'" See *State v. Churchich*, No. A-13-1005, 2014 WL 5335357 *1 (Neb. App. Oct. 21, 2014) (selected for posting to court website). A text from Churchich to his father read, "The cops r here and its [sic] either them or me." *Id*. And when Churchich was taken into custody, he had blue paint writings on his body, one of which said "'fuck Sarpy County Police.'" *Id*. at *2*. In his report, Dr. Moore said, "I think Churchich did know what he was doing because he did it deliberately." "He called his father to say, 'It's either them or me.' He told me he was angry and that he was firing the gun in anger*.*" The prejudice requirement in a plea context is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading guilty. *State v. Haynes, supra*. For the reasons stated, no rational defendant would have insisted on going to trial.

## VI. CONCLUSION

We affirm the decision of the district court denying and dismissing Churchich's motion for postconviction relief.

AFFIRMED.