IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. HARDER

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

NICHOLAS B. HARDER, APPELLANT.

Filed December 11, 2018.    No. A-18-244.

Appeal from the District Court for Burt County: JOHN E. SAMSON, Judge. Affirmed.

Benson C. Wallace, of Anderson & Anderson, for appellant.

Douglas J. Peterson, Attorney General, and Joe Meyer for appellee.

PIRTLE, RIEDMANN, and BISHOP, Judges.

BISHOP, Judge.

## I. INTRODUCTION

Nicholas B. Harder pled "no contest" to two counts of child abuse, each a Class IIIA felony. The district court for Burt County sentenced him to 30 months' imprisonment and 18 months' postrelease supervision on each count, and the sentences were to run consecutively. Harder claims that his sentences are excessive and that his counsel was ineffective. We affirm.

## II. BACKGROUND

On July 7, 2017, the State filed an information charging Harder with three counts of sexual assault of a child, each a Class IIIA felony, pursuant to Neb. Rev. Stat. § 28-320.01 (Reissue 2016). The counts all alleged the same victim (E.W.), but separate dates for each incident.

Pursuant to a plea agreement, the State filed an amended information charging Harder with two counts of child abuse pursuant to Neb. Rev. Stat. § 28-707(1)(a) (Reissue 2016), each a Class IIIA felony. The counts again alleged the same victim (E.W.), but separate dates for each

incident. Harder pled "no contest" to both counts of the amended information. In exchange for Harder's plea, the State said that the amended information was filed, "there is no agreement as to sentencing, and there will be a PSI requested." According to the factual basis provided by the State,

> On or about August 2016 members of the Lyons Police Department were contacted by a [L.S.] regarding an incident between her daughter E.W., born in 2001, and the defendant . . . Harder. On contact with the victim it was determined that [Harder] had on or about April 10th, 2016, and on May 25th, 2016, placed E.W. . . . in a situation that endangered her mental or physical health by physically assaulting her by placing his hands on her. This was done knowingly and intentionally, but did not result in serious bodily injury, all events in Burt County, Nebraska.

(We note that according to information from the presentence investigation (PSI), L.S. is E.W.'s aunt, not her mother as stated in the factual basis.) The district court accepted Harder's "no contest" pleas to both counts and found him guilty of the same.

The sentencing hearing was held on February 15, 2018. The district court sentenced Harder to 30 months' imprisonment and 18 months' postrelease supervision on each count, and the sentences were to run consecutively. Harder was given 344 days' credit for time served. An order memorializing the sentences was filed on February 16. Harder now appeals.

### III. ASSIGNMENTS OF ERROR

Harder assigns as error, reordered, that (1) the district court imposed excessive sentences, and (2) he received ineffective assistance of counsel.

### IV. STANDARD OF REVIEW

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Dyer*, 298 Neb. 82, 902 N.W.2d 687 (2017). A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id.*

Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. *State v. Loding*, 296 Neb. 670, 895 N.W.2d 669 (2017). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only questions of law: Are the undisputed facts contained within the record sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance? *Id.*

### V. ANALYSIS

#### 1. EXCESSIVE SENTENCE

Harder claims the district imposed excessive sentences under the circumstances of this case. Harder was sentenced to 30 months' imprisonment and 18 months' postrelease supervision for each of his two convictions for child abuse, Class IIIA felonies. A Class IIIA felony is punishable by up to 3 years' imprisonment and 18 months' postrelease supervision, a $10,000 fine, or both; there is no minimum term of imprisonment, but there is a minimum of 9 months'

postrelease supervision if imprisonment is imposed. See Neb. Rev. Stat. § 28-105 (Reissue 2016). Harder's sentences were therefore within the statutory limits.

Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Stone*, 298 Neb. 53, 902 N.W.2d 197 (2017). When imposing a sentence, the sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the violence involved in the commission of the offense. See *id.* The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *State v. Chacon*, 296 Neb. 203, 894 N.W.2d 238 (2017).

Harder was 30 years old at the time of the crimes, and 32 years old at the time of sentencing. He was single and reported he had three dependents (his three children lived with their respective mothers; one of his three children was adopted by her stepfather). Harder had a high school diploma and attended ITT Tech for 1 year and then community college for one semester. At the time of the PSI, Harder was unemployed due to his incarceration. He appears to have been employed in various capacities (construction, pipe fitter, safety coordinator) from August 2013 to May 2016. In May 2016, he quit his job of 6 months because of the investigation in the current case.

Harder's criminal history includes convictions for third degree domestic assault (twice; one sentence of 90 days in jail, and one sentence of 30 days in jail and 18 months' probation); violating a protection order (twice; 30 days in jail each time); attempt of a Class IIIA or IV felony (24 months' probation); possession of marijuana (fine); possession of drug paraphernalia (fine); theft by shoplifting (fine); driving under suspension (twice; fines); unauthorized use of a propelled vehicle (5 days in jail); and false reporting (100 days in jail). As noted above, Harder was sentenced to probation for domestic assault (in 2009) and for attempt of a Class IIIA or IV felony (in 2011); notations for both indicate that his probation was revoked in October 2011 and he was sentenced to 1 year in jail.

As for his current offenses, information in the PSI reveals the following. E.W. (born in 2001) reported that in April 2016 Harder stuck his hand down her shirt and moved his hand back and forth on her breasts underneath her bra; a couple weeks later, Harder sent her a couple pictures of his "dick" on Snapchat. E.W. reported that in May, Harder lifted up her shirt and began to touch her breasts. He told her to sit on the couch and close her eyes, and when she opened her eyes Harder was sitting next to her and "jacking off." She said Harder grabbed her hand and put it on his "dick" and moved her hand back and forth; he then grabbed her other hand and put it on his "balls." E.W. reported that in July, Harder lifted up her shirt and began to "play and suck on her breasts"; he then "took out his dick and began 'jacking off'" and asked if he could "'come [sic] on [her] boobs,'" but she said no.

As part of the presentence investigation, the probation officer conducted a level of service/case management inventory. Harder was assessed at a "[h]igh risk to reoffend." He scored in the "high" risk range for the following domains: Criminal History and Antisocial Pattern. He

scored in the "medium" risk range for the following domains: Education/Employment, Leisure/Recreation, Companions, and Procriminal Attitude/Orientation. Harder also completed the Vermont Assessment for Sex Offender Risk and his score indicated he is a "Moderate-Low" risk to reoffend. During the PSI, Harder reported that he was in a snowmobile accident in his junior year of high school that left him in a coma for a month; he also reported that was left with "frontal lobe syndrome, and the symptoms include having a short fuse and impulsive behavior." Harder stated that he "has been able to curb his short fuse in the last five years."

At the sentencing hearing, the district court stated it had received and reviewed the PSI, including addendums (character references and a letter from defense counsel with medical records regarding neurological issues and surgery) and a letter from defense counsel which enclosed a letter from Madison County that the court said it would include in the PSI. (While the record before us has the addendums included in the PSI, our record does not include the letter from defense counsel which purportedly enclosed a letter from Madison County; and we do not know the contents of the Madison County letter.) According to an addendum letter from Harder's mother, Harder was diagnosed with a brain tumor at the end of May 2017, and he underwent surgery during which part of the tumor was removed; she said it will grow back but the doctors are not sure how fast it will grow back. According to an addendum letter from Harder's attorney, Harder had a benign brain tumor removed in May 2016; medical records enclosed in the attorney's letter show that Harder had a colloid cyst resected in May 2016.

Harder's counsel stated: "This is one of those cases that's extremely difficult to defend because there's no physical evidence. It's he said versus she said, and he has denied from day one." Counsel noted that Harder entered a plea to avoid the possibility of having to register as a sex offender, and that the plea also avoided having to put E.W. through trial, "which is to be looked at by the Court." Counsel pointed out that with Harder's physical problems he "could have some difficulties" if he is sentenced to prison, and counsel suggested the court place Harder on probation, stating, "I think [Harder] probably would make it if he was placed on probation." Counsel also asked that any sentence imposed be concurrent rather than consecutive.

Harder personally addressed the district court and said he would like to apologize "first and foremost to the victim in this case and her family for everything that's gone on, and to the Court for . . . taking their time in all this stuff, the State of Nebraska, and Burt County. I apologize for my actions." Harder also stated, "I know that I've been on probation and didn't complete it before, but I know if I'm on probation now I wouldn't let you down, I would make you proud of me for completing it and everything. I've got a good support base in my family that I never had before," and "it's uplifting to me and it's told things and even though it's not a good situation . . . good has come out of it for me."

The State argued that "[t]he serious nature of these charges" "do not mandate that [Harder] be a candidate for probation." The State noted Harder's "rather lengthy" record which included assault charges and violation of protection orders, and that Harder had previously been placed on probation and had that probation revoked. The State acknowledged the letter from Madison County (the content of which this court is unaware), but said "one good deed doesn't erase other crimes." The "victim in this matter was a very young child" who was "going to have to live with this for the rest of her life." The State believed that "anything less than a . . . rather lengthy term of incarceration would depreciate the seriousness of this offense."

- 4 -

The district court noted that the victim was 14 years old at the time of the incidents and that she was the niece of Harder's girlfriend; "Needless to say, the young victim's account was graphic and the acts that she described were deplorable." The court said it had considered "the nature and circumstances of the crime, the history, character and condition of [Harder], the [PSI] and the statements received from all parties, including the victim's family." The court found that

> imprisonment is necessary because the risk is substantial that during a period of probation [Harder] would engage in additional criminal conduct, [Harder] is in need of correctional treatment that can be provided most effectively by commitment to a correctional facility, [and] a lesser sentence will depreciate the seriousness of [Harder's] crime or promote disrespect for the law.

The court sentenced Harder to 30 months' imprisonment and 18 months' postrelease supervision for each of his two convictions. The sentences were to run consecutively (both sentences of incarceration would run consecutively and both sentences of postrelease supervision would run consecutively); "So it's a total of 60 months incarceration and a total of 36 months of post-release supervision on those." Harder was given 344 days' credit for time served.

In his brief on appeal, Harder asserts that a lesser term of imprisonment would be appropriate, and asks this court to "impose a sentence of credit for time served and post release supervision." Brief for appellant at 21.

Having considered the relevant factors in this case, we find that Harder's sentences were not excessive or an abuse of discretion and his sentences are therefore affirmed. See *State v. Dyer*, 298 Neb. 82, 902 N.W.2d 687 (2017) (sentence imposed within statutory limits will not be disturbed on appeal absent abuse of discretion by trial court).

## 2. EFFECTIVENESS OF COUNSEL

Harder claims that he received ineffective assistance of counsel in various ways. He is represented by different counsel on direct appeal than he was in the underlying proceedings in district court. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. Otherwise, the issue will be procedurally barred. *State v. Casares*, 291 Neb. 150, 864 N.W.2d 667 (2015).

The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. *State v. Loding*, 296 Neb. 670, 895 N.W.2d 669 (2017). The determining factor is whether the record is sufficient to adequately review the question. *Id.*

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that counsel's performance was deficient and that this deficient performance actually prejudiced his or her defense. *State v. Sellers*, 279 Neb. 220, 777 N.W.2d 779 (2010). To show prejudice when the alleged ineffective assistance relates to the entry of a plea, the defendant must show that there is a reasonable probability that, but for counsel's errors, he or she would not have entered the plea and would have insisted on going to trial. *State v. Fester*, 287 Neb. 40, 840 N.W.2d 543 (2013). The two prongs of this test, deficient performance and prejudice, may be addressed in either order. *Id.*

We turn now to address Harder's ineffective assistance claims, namely, that his trial counsel (1) failed to arrange for Harder to review discovery, (2) induced a plea with a specific promise of a sentence, and (3) failed to effectively advocate at sentencing.

(a) Discovery

Harder claims that his trial counsel failed to arrange for Harder to review discovery, specifically "affidavits and statements of the victims." Brief for appellant at 12. Therefore, Harder "was unable to make an informed decision about the resolution of his case having not had the opportunity to see the statements made by others about him" and he "was further denied the opportunity to provide counsel with input about the accuracy or lack thereof of these statements." *Id*. Harder concedes there is no evidence to support the claims above regarding whether or not discovery was made available for his review. He "urges this Court to take notice that this issue has been raised and preserved for post-conviction purposes and that this Court find that there is insufficient evidence upon which to rule on this issue." *Id*. at 14. The State also contends that the record is insufficient to address this claim on direct appeal. We disagree.

As stated previously, to show prejudice when the alleged ineffective assistance relates to the entry of a plea, the defendant must show that there is a reasonable probability that, but for counsel's errors, he or she would not have entered the plea and would have insisted on going to trial. *State v. Fester, supra*. The likelihood of the defense's success had Harder insisted on going to trial is relevant to this prejudice analysis. See *State v. Haynes*, 299 Neb. 249, 908 N.W.2d 40 (2018). It is relevant to the consideration of whether "'a rational defendant [would have] insist[ed] on going to trial.'" *Id*. at 263, 908 N.W.2d at 53 (brackets in original). The likelihood of the defense's success had the defendant gone to trial should be considered along with other factors, such as the likely penalties the defendant would have faced if convicted at trial, the relative benefit of the plea bargain, and the strength of the State's case. *State v. Haynes, supra*.

In this case, had Harder not taken the plea deal and insisted on going to trial, he would have gone to trial on three charges of sexual assault of a child pursuant to § 28-320.01, each a Class IIIA felony. As relevant here, § 28-320.01 states,

> (1) A person commits sexual assault of a child in the second or third degree if he or she subjects another person fourteen years of age or younger to sexual contact and the actor is at least nineteen years of age or older.
>
> . . . .
>
> (3) Sexual assault of a child is in the third degree if the actor does not cause serious personal injury to the victim. Sexual assault of a child in the third degree is a Class IIIA felony for the first offense.

Neb. Rev. Stat. § 28-318(5) (Reissue 2016) states:

> Sexual contact means the intentional touching of the victim's sexual or intimate parts or the intentional touching of the victim's clothing covering the immediate area of the victim's sexual or intimate parts. Sexual contact shall also mean the touching by the victim of the actor's sexual or intimate parts or the clothing covering the immediate area of the actor's sexual or intimate parts when such touching is intentionally caused by the actor. Sexual contact shall include only such conduct which can be reasonably construed

as being for the purpose of sexual arousal or gratification of either party. Sexual contact shall also include the touching of a child with the actor's sexual or intimate parts on any part of the child's body for purposes of sexual assault of a child under sections 28-319.01 and 28-320.01[.]

The State had a strong case as to the original charges filed. It would have been easy to prove the age of the victim (14) and the age of Harder (30) at the time of the incidents in April, May, and July 2016. Further, as set forth in detail previously in this opinion, E.W. reported that in April 2016 Harder rubbed her breasts underneath her bra; in May, Harder touched her breasts, "jack[ed] off," and put her hands on his "dick" and "balls"; and in July, Harder "play[ed] and suck[ed] on her breasts," "jack[ed] off," and asked if he could "'come [sic] on [her] boobs.'" Evidence of sexual contact and the ages of the victim and Harder is all that would have been necessary at trial to convict Harder of sexual assault of a child under § 28-320.01.

Given the strength of the State's case under the original charges, it is not likely a rational defendant would have insisted on going to trial. Under the original charges, Harder would have been facing a third Class IIIA felony, punishable by up to 3 years' imprisonment and 18 months' postrelease supervision, a $10,000 fine, or both. See § 28-105. Further, any conviction under the original charges would have required Harder to register as a sex offender. See Neb. Rev. Stat. § 29-4003 (Reissue 2016) (Sex Offender Registration Act applies to any person who on or after January 1, 1997, has ever pled guilty to, pled nolo contendere to, or been found guilty of sexual assault of a child in the second or third degree pursuant to section 28-320.01). At the plea hearing, Harder confirmed his understanding that he would not have to register under the Sex Offender Registration Act pursuant to the allegations in the amended charges (child abuse). Later at the plea hearing when the district court asked Harder if he felt the plea agreement was in his best interests, Harder responded, "Yes, Your Honor." At the sentencing hearing, defense counsel noted that Harder entered a plea to avoid the possibility of having to register as a sex offender. With the reduction in the number of charged felonies, and the fact that the amended nature of the charges no longer subjected Harder to the possibility of registering as a sex offender, Harder cannot show a reasonable probability that he would have gone to trial, thus he cannot show prejudice. Therefore, Harder's ineffective assistance of counsel claim regarding his ability to review discovery fails.

(b) Specific Promise of Sentence

As to Harder's allegation that his trial counsel induced a plea with a specific promise of a sentence, he claims trial counsel assured him that the district court "would impose a concurrent sentence of 30 months with credit for time served with post release supervision." Brief for appellant at 14. He concedes that during the plea colloquy, he was asked a series of questions by the district court which were designed to ascertain the voluntariness of his plea and the waiver of his rights. He requests, however, that this court "consider the realities of the courtroom" wherein a "savvy defendant will answer the court proffered questions in a fashion guaranteed to get the desired result." *Id*. at 14-15.

The record shows that the following colloquy took place at the outset out of the plea hearing.

THE COURT: . . . Would someone recite the terms of the plea agreement for me?

[The State]: Your Honor, in exchange for a plea of guilty or no contest there has been an Amended Information that has been filed that is before you. There is to be a plea of guilty or no contest to both counts, there is no agreement as to sentencing, and there will be a PSI requested.

THE COURT: Okay. [Defense Counsel], is that correct sir?

[Defense Counsel]: That is, Your Honor.

THE COURT: All right. More importantly, Mr. Harder, is that your understanding?

[Harder]: Yes, Your Honor.

THE COURT: There are two Class IIIA Felonies of child abuse, there is no agreement as to sentence. Has anybody promised you what the sentence is going to be in this case?

[Harder]: No, Your Honor.

The district court said it would explain the elements of the charges and the possible penalty. After explaining the elements of the first charge, the court said, "That one is a Class IIIA Felony, which is zero to three years incarceration, nine to eighteen months post-release supervision, zero to a $10,000 fine, and if there was any injury caused you could be ordered to pay restitution." After explaining the elements of the second charge, the court said, "That one also is a Class IIIA Felony, zero to three years incarceration, nine to eighteen months post-release supervision, and there could be restitution if there was any injury caused." The court asked Harder if he "[understood] the elements of both charges and the possible penalties," and Harder responded, "Yes, Your Honor." Later, after explaining the consequences of entering a plea (i.e., the waiving of certain rights), the court asked Harder, "Has anyone connected to law enforcement, or anyone else, made any threat direct or indirect, used any force, or held out any inducement or promise to get you to waive all the rights we've been discussing this morning?" Harder responded, No, Your Honor." The court also asked Harder, "After consultation with [your attorney], knowing what evidence the State of Nebraska may be able to produce at the time of trial, the possible consequences and risks associated with going to trial, and after consultation with [your attorney], do you feel this plea agreement is in your best interests?" Harder responded, "Yes, Your Honor."

Harder specifically denied that anyone promised him what the sentence was going to be in this case. Thus, the record refutes Harder's claim that his trial counsel promised him a specific sentence. See *State v. Dragon*, 287 Neb. 519, 843 N.W.2d 618 (2014) (when defendant had unequivocally represented to court at plea hearing that no promises were made by anyone regarding sentence to be imposed, defendant was not entitled to evidentiary hearing on his postconviction claim to contrary). Harder urges this court to reconsider the ruling in *State v. Dragon*; this court is without the authority to do so, and further, the record clearly refutes Harder's claim that counsel promised him a specific sentence. This claim of ineffective assistance of counsel is without merit.

(c) Advocacy at Sentencing

Harder also claims that his trial counsel failed to effectively advocate in that "trial counsel failed to inform the judge that his client had failed to obtain a psychological/sexual evaluation prior to sentencing" and the lack of such related directly to the length of Harder's sentence. Brief for appellant at 11.

As noted by Harder in his brief, the district court ordered a PSI and the matter was set for sentencing on January 11, 2018; the sentencing hearing was ultimately held on February 15. Although not apparent on the record before us, Harder claims that "the reason" the sentencing hearing was continued until February 15 "was in order to review Medical Reports and receive a Psychological/Sexual evaluation." Brief for appellant at 11. Harder further claims the PSI "did not include any evidence of Psychological/Sexual evaluation and only limited medical reports." *Id.*

After pronouncing Harder's sentence on the record, the district court went over the terms of Harder's postrelease supervision, and stated, in relevant part, that while Harder was incarcerated, he "shall obtain a psychosexual evaluation and follow all recommendations of the evaluation after [his] treatment"; this requirement also appears in the written "Order for Post Release Supervision" filed on February 15, 2018. At the conclusion of the sentencing hearing, the court addressed Harder one more time, stating:

> Mr. Harder, the length of the sentence, one of the reasons I looked at it -- well, the severity of the crime certainly, but the second part is on that length of a sentence you'll be able to participate in programs at the Department of Corrections and they will do some evaluations and then those evaluations will be -- any follow-up that they have on that will be taken care of during the 36 months of post-release supervision. That's another one of the reasons why I rendered the sentences I did.

Harder asserts that the district court "felt it necessary for [him] to receive the psychological/sexual evaluation through the Department of Corrections with enough time in custody to complete any programs." Harder contends, however, that "[a]ll of this could have and should have been done prior to sentencing," and the lack of such evaluation "related directly to the length of sentence." Brief for appellant at 11. Harder claims, "To this date [he] has not received a psychological/sexual evaluation." *Id.*

In its brief, the State said it "does not understand what evaluation Harder is referencing" and that "Harder appeared to receive some sort of evaluation, the result of which placed him in the moderate-to--low risk to reoffend." Brief for appellee at 4. The State further claims the PSI had detailed information about Harder's sexual history. And "[t]he court had access to the information - either the exact type or very similar - Harder claims it did not. Defense counsel cannot be deficient for failing to tell the court tests were not completed when they were in fact completed." *Id.* at 4-5. The PSI states that Harder completed the Vermont Assessment for Sex Offender Risk and, "This assessment tool is used by Nebraska State Probation to determine a sex offender's appropriateness for community supervision"; Harder's score indicated he is a "Moderate-Low" risk to reoffend. The Vermont Assessment for Sex Offender Risk, used by probation, does not appear to be the "psychological/sexual evaluation" Harder claims should have

been given to him prior to sentencing, and which the court ordered him to obtain while incarcerated.

The district court ordered a PSI in this case. Neb. Rev. Stat. § 29-2261(3) (Reissue 2016) states:

> The presentence investigation and report shall include, when available, an analysis of the circumstances attending the commission of the crime, the offender's history of delinquency or criminality, physical and mental condition, family situation and background, economic status, education, occupation, and personal habits, *and any other matters that the probation officer deems relevant or the court directs to be included*. All local and state police agencies and Department of Correctional Services adult correctional facilities shall furnish to the probation officer copies of such criminal records, in any such case referred to the probation officer by the court of proper jurisdiction, as the probation officer shall require without cost to the court or the probation officer.
>
> Such investigation shall also include:
> (a) Any written statements submitted to the county attorney by a victim; and
> (b) Any written statements submitted to the probation officer by a victim.

(Emphasis supplied.)

Section § 29-2261(5) states that before imposing sentence, the court may order the offender to submit to psychiatric observation and examination for a period not exceeding 60 days or such longer period as the court determines to be necessary for that purpose. And Neb. Rev. Stat. § 29-2204.03(1) (Reissue 2016) states:

> When the court is of the opinion that imprisonment may be appropriate but desires more detailed information as a basis for determining the sentence to be imposed than has been provided by the presentence report required by section 29-2261, the court shall commit an offender to the Department of Correctional Services for a period not exceeding ninety days. The department shall conduct a complete study of the offender during that time, inquiring into such matters as his or her previous delinquency or criminal experience, social background, capabilities, and mental, emotional, and physical health and the rehabilitative resources or programs which may be available to suit his or her needs.

Both §§ 29-2261 and 29-2204.03 give the court the discretion to order further evaluations of the defendant prior to sentencing when it deems such evaluations necessary for determining the sentence to be imposed; neither statute provides that a defendant can or should request the evaluations. Trial counsel cannot be deficient for failing to inform the judge that his client had failed to obtain a psychological/sexual evaluation prior to sentencing when the court itself could have ordered such evaluations prior to sentencing, but did not. See *State v. St. Cyr*, 26 Neb. App. 61, 916 N.W.2d 753 (2018) (trial counsel cannot be deficient for failing to request evaluations that court itself could have ordered, but in its discretion deemed unnecessary).

Furthermore, as noted by the State, Harder cannot show prejudice. The completion of evaluations was not the sole reason for the length of Harder's sentences. The district court also said that it considered the severity of Harder's crimes and that the length of the sentences would allow Harder to participate in programs at the Department of Corrections. Because Harder can

- 10 -

show neither deficiency of counsel nor prejudice with respect to the psychological/sexual evaluation, his claim of ineffective assistance of counsel fails.

## VI. CONCLUSION

For the reasons stated above, we affirm Harder's sentences.

AFFIRMED.